Riverton Consolidated Water Company, Appellant, *v.* Public Service Commission.

Argued December 11, 1931. 

 Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and STADTFELD, JJ. 

*Charles H. English,* of *English & Quinn, Leemhuis and Tayntor,* and with him *Spencer G. Nauman,* of *Nauman & Smith,* for appellants, cited: Sherman v. Public Service Commission, 90 Pa. Superior Ct. 523; Ben Avon Borough v. Ohio Valley Water Company, 271 Pa. 346; Bangor Water Company v. Public Service Commission, 82 Pa. Superior Ct. 248.

*E. Everett Mather, Jr.,* Assistant Counsel, and with him *John Fox Weiss,* Counsel for appellee, cited: Ward's Appeal, 289 Pa. 458; Johnstown v. Johnstown & Stony Creek Railroad Company, 75 Pa. Superior Ct. 540.

Opinion by LINN, J., March 5, 1932:

This appeal is from the following order of the Public Service Commission: "It is further ordered: That, if and when applications for service are made to respondent, Riverton Consolidated Water Company, in accordance with its tariff rules, with written guarantees by the several applicants of a total gross revenue from said extension of not less than $410 per year, respondent water company forthwith extend its service to the community known as Rana Villa, in Lower Allen Township, Cumberland County, and more particularly to the properties now or late of the following, to-wit." [This is followed by the names of the owners of twenty-seven properties.]

The complaint was originated by the commission. The appellant is a public service company supplying water for domestic purposes in Cumberland and York Counties, among others, in Lower Allen Township, Cumberland County. The place immediately involved is Rana Villa, a small village abutting on a main highway called the Gettysburg Pike; this village adjoins Shiremanstown, on the west, and on the east is very close to the borough of Camp Hill. These places are about 3 miles west of the City of Harrisburg. Rana Villa is within the chartered territory of the water company; unless it furnishes water, the residents must continue to supply themselves with wells dug in their lots. One of those wells has already been condemned by the health authorities; cesspools and other drainage now percolate into the soil. A number of property-owners testified before the commission to the necessity for the desired service. There was evidence that the development of the village was retarded by lack of water-supply, and that if the water company introduced its service, there would, in all probability, be consumers in addition to those now demanding service. The owners of 27 properties signed a paper

filed with the commission, and printed in the record, agreeing to guarantee minimum annual payment of amounts set opposite their respective names (totaling $410) for water service for their properties. It also appears that the service will probably be desired for fire protection at a rate to be established. As the water company is furnishing water in the borough of Camp Hill and also in Shiremanstown, the request for an extension of its service into Rana Villa—a suburb adjacent to the two villages named, is to be distinguished from the ordinary request that a public service company extend its service into new territory beyond that being served at the time. The request for service, here, is in its territory, where it has the monopoly, and close to where it is supplying water both to the east and also to the west. To comply with the order, of course, requires the extension of its facilities from the mains supplying the other places. Concerning the character of the extension that should be made, the evidence of the water-works engineer of the commission differed from evidence on the same subject offered by the water company. An important difference between the two results from the view-point of the witnesses. To keep down the expense, the commission's engineer estimated on the smallest sized main—4 inches—that would immediately supply the demands; this evidence fixes the expenditure for a 4 inch main at $4,147 (estimating labor at $.35 an hour) and at $4,417, taking labor at $.40. This witness also said that if a 6 inch main were laid in Locust Street for a distance of 400 feet, and an 8 inch main in the Gettysburg Pike for a distance of 3100 feet, the expenditure would be $6,740 (estimating labor at $.35 an hour) and $7,103, with labor at $.40.

The learned counsel for appellant criticizes the report of the commission as based on the use of a 4 inch main; he calls attention to a statement in the report

of the commission's engineer to the effect that while a 4 inch main would be adequate to provide domestic service to abutting properties, it would be impractical to install a 4 inch main "even though the reasonableness of extending service to these applicants may be measured and judged totally or largely on the basis of cost of 4 inch line." But we must consider, as the commission may have, that this witness also said that "For these customers and all other customers that would require domestic service along this proposed extension, a 4 inch extension would be adequate." The fact is that this witness made his estimates on two bases—one for a 4 inch line, the other on a combination of 6 inch and 8 inch lines. The relation of the two will appear by recalling that the contents of two pipes vary with the square of the radius of each,—a 4 inch pipe containing only one-fourth as much as an 8 inch pipe of the same length. Considering the record as a whole, we cannot say that there was abuse of the discretion confided in the commission in limiting its order to a 4 inch main; if the water company wishes now to install an 8 inch main in Gettysburg Pike, and to develop its system to accord with the theory of its engineer as to what the future will probably demand as the economical plant, there is nothing in the order to prevent it.

The evidence, from the view-point of the water company, is that the 4 inch line would be inadequate, and that to construct the line with 6 inch and 8 inch pipes as described above, would cost $8,401, and that the additional cost of service mains, and 5% for contingencies, would increase the total cost to $10,217. The water company contends that the operating cost of furnishing water to 27 consumers is $67.50 a year, and that there should be added to that sum, a depreciation of 2%, of $204.36, which would make the total operating cost $271.86 per year, with the result that the net

income on the investment of $10,217 will be only $128. From those figures appellant contends that the return on the investment will be so small as to result in confiscation of its property if the order of the commission must be carried out.

Assuming that the net return will be no more than is stated by the water company, the rate of return of course increases as the cost of installation diminishes, and will, therefore, be considerably more if the installation cost of the commission's engineer be accepted. In its report the commission finds that " ...... mains of sufficient size to furnish adequate service to domestic consumers in this vicinity can be installed at a cost not in excess of $5,500, upon which the total guarantee of $410, ...... represents a gross revenue of about 7½%. While the commission will not interfere with the reasonable exercise of a water company's managerial discretion as to the method of constructing its facilities, it cannot agree that public water service under facts such as here presented may properly be withheld until such time as the community is able to produce a return, not only on the facilities necessary to supply it, but also on such facilities as the company may plan ultimately to install in that area as part of its general service to the entire territory. In the light of the amounts guaranteed and of all the attendant facts, the commission finds that the service, accommodation and convenience of the public require the extension and that it is a reasonable one for the company to make at the present time."

We recognize the force of the contention of the water company that the 4 inch main, even if adequate for the immediate demand, will not be adequate to accommodate the whole of Rana Villa, or such increase in the demand for service as may reasonably be expected, and that to do so, will require an 8 inch main in Gettysburg Pike, and at least a 6 inch main in

Locust Street for the distances given above. In apparent recognition of that, the commission very properly stated that it will not interfere with the reasonable exercise of the company's discretion in constructing its facilities. But the commission was acting within its jurisdiction, in the circumstances, in concluding that the needs of the present applicants for water may not go unheeded until the community reaches the growth required to pay a larger return on the larger investment in this extension. While it is an administrative question whether service should now be supplied to Rana Villa, the question whether the service has been ordered in on conditions, or at a cost, that will result in confiscation depends on facts the record does not contain.

This court may not review the administrative discretion of the commission further than to see that there is sufficient evidence to support its action: Shearer v. P. S. C., 99 Pa. Superior Ct. 386, 390. In this record we think there is ample evidence.

We also agree that the argument for confiscation can not be supported within the rules governing the determination of that question. In Sherman v. P. S. C., 90 Pa. Superior Ct. 523, 526, we said: "We are not to be understood as holding that the extension of service of a public utility is dependent on the profit which may reasonably be expected therefrom; in proper cases such extension may be ordered though the immediate result of the expansion may entail financial loss to the company; but the company should not be subjected to unreasonable expenditures, nor the consuming public be unduly burdened, because of the over-development or premature development of scattered sections of the city in advance of its normal growth, when there is no rational expectation of the event justifying the expenditure." In that case we found there was adequate evidence to support the action of the commission in

refusing to order an extension of water service. See also Phila. Rural Transit Co. v. P. S. C., 103 Pa. Superior Ct. 256. The mere fact that the rate of the return will be low on the installation adopted by the commission, or on that proposed by the engineer of the water company, is not sufficient to permit this court to declare that there has been infringment of constitutional right. The record gives us no information whatever about the value of the company's plant, used and useful, in the water service, or of its return on that base; the rate base and the return are facts; their relation determines whether or not there is confiscation. It may very well be that if the service is extended and rendered at a loss on the immediate installation cost, that the company will still be making an adequate return on all its operations; the burden of proving confiscation was, of course, on the water company; the evidence does not support it. In New York & Queens v. McCall, 245 U. S. 345 at 350, it is said: "There is no showing in the record as to the fair value of the entire property of the gas company used in the public service, nor of the rate of return which it was earning thereon, and therefore even if the return on the cost of complying with the order be conceded to be inadequate, this would not suffice to render the order legally unreasonable: Atlantic Coast Line R. R. Co. v. North Carolina Corporation Commission, 206 U. S. 1, 24-6; Missouri Pacific Ry. Co. v. Kansas, 216 U. S. 262; Puget Sound Traction Co. v. Reynolds, 244 U. S. 574, 580."

We all agree, therefore, that the appeal must be dismissed, but that an ambiguity in the order, to which appellant calls attention, should be clarified. The order as quoted above, requires that the water company "extend its water mains so as to provide reasonably adequate water service to the community known as Rana Villa ...... and more particularly on the land of the

following, to wit: ......" The evidence and the inquiry were apparently limited to service to the subscribers to the guaranty referred to, whose names appear in the order and not to the entire settlement on both sides of the Gettysburg Pike. The words of the order "to provide reasonably adequate water service to the community known as Rana Villa" are broad enough to include a much larger area than that specifically under investigation. We were assured at the oral argument that the commission did not intend that its order should apply generally, but only to provide service to the parties particularly mentioned; so understood the order is affirmed and the appeal is dismissed.

This opinion was written by Judge LINN prior to his appointment to the Supreme Court, and has been adopted as the opinion of this court. F. M. TREXLER, P. J.