### Akron *v.* Pennsylvania Public Utility Commission.

Argued April 12, 1971. Before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

W. *Russel Hoerner,* with him *C. Edward S. Mitchell, Shearer, Mette & Hoerner,* and *K. L. Shirk, Jr., Shirk & Reist,* for plaintiff.

*Ronald Ziegler,* Assistant Counsel, with him *Edward Munce,* Acting Counsel, for defendant.

OPINION BY JUDGE KRAMER, August 5, 1971:

This case comes within the original jurisdiction of this Court. It involves two Complaints in Equity which in effect question the jurisdiction of the Pennsylvania Public Utility Commission. It comes via a long and varied route.

By an Order dated May 12, 1958, and reported at 36 Pa. P.U.C. 100 (1958), the defendant, the Pennsylvania Public Utility Commission (Commission) granted a certificate of public convenience to the plaintiff, Borough of Akron (Akron), authorizing it to furnish water service within a portion of the Township of West Earl, Lancaster County, Pennsylvania. This authorization included, *inter alia,* a metes and bounds description of the extra-territorial area (i.e., territory outside Akron's municipal boundaries) to be served. The application of Akron for the certification of service explicitly requested that the certification be restricted to the metes and bounds area described in it.

Under Section 2407 of the Borough Code, Act of February 1, 1966, P. L. (1965), No. 581, 53 P.S. 47407, a borough maintaining a "waterworks" has authority to supply water outside of its political boundaries, subject to the jurisdiction of the Commission (66 P.S.

1102, 1122, 1141 and 1171. See *State College Borough Authority v. Pennsylvania P.U.C.*, 152 Pa. Super. 363, 31 A. 2d 557 (1943).

On May 4, 1967, Mahlon N. Zimmerman,[*] intervening defendant (Zimmerman), a real estate developer, filed a complaint No. 18356 with the Commission, repquesting an order requiring Akron to furnish water service within a tract owned by him. Zimmerman's tract of land is located within the Township of West Earl, but outside of the 1958 certificated service area of Akron. Akron requested the Commission to dismiss the aforementioned complaint, and the Commission refused. On August 21, 1967, Akron filed a complaint in equity with the Court of Common Pleas of Dauphin County (Commonwealth Docket), praying, *inter alia,* that the Commission be enjoined and restrained from the conduct of any proceedings or the issuance of any orders relating to complaint No. 18356, on the basis that the Commission lacked jurisdiction to order an extension of water service to areas outside the certificated area. On September 8, 1967, the Commission filed preliminary objections to Akron's complaint. These preliminary objections included a demurrer and a petition raising a jurisdictional question. An order was issued by the Court of Common Pleas of Dauphin County on January 2, 1970, dismissing the preliminary objections of the Commission and granting the Commission and Zimmerman thirty days during which to answer Akron's complaint. The Commission appealed to the Supreme Court of Pennsylvania on January 13, 1970, from the order of court. The Supreme Court, on October 9, 1970, affirmed the order of the lower court, at 441 Pa.

---

[*] It should be noted that Zimmerman's predecessor in title, viz., John S. Zimmerman, participated in the 1958 certification hearing mentioned above in which his request to extend the service area to this same property proposed to be served in this case was not granted by the Commission.

9, 270 A. 2d 393, holding that a substantial question as to the jurisdiction of the Commission had been raised under Section 1111* of the Public Utility Law, Act of May 28, 1937, P. L. 1053, 66 P.S. 1441. Thereafter the case was transferred to the Commonwealth Court on December 4, 1970. The Commission filed an answer to the complaint of Akron on December 8, 1970, admitting all of the allegations of Akron. On December 10, 1970, Akron filed a motion for judgment on the pleadings. Judgment by default was entered against Zimmerman on December 22, 1970. On December 1, 1970, the Commission notified Akron that a hearing had been set by the Commission for January 14, 1971, on Commission complaint No. 18356, in spite of this pending case. On December 22, 1970, Akron filed a petition for a preliminary injunction to enjoin the Commission from holding hearings on complaint No. 18356 during the pendency of the present proceedings. The prayed for injunction was granted by President Judge BOWMAN on January 8, 1971. This Court is now faced with (1) Akron's motion for judgment on the pleadings, and (2) Akron's complaint for a final and permanent injunction against the Commission holding further hearings on complaint No. 18356.

We first point out that the Commission's persistence in setting down a hearing on complaint No. 18356, in the face of the Pennsylvania Supreme Court's October 9, 1970, ruling at *P.U.C. v. Akron Borough, supra,* indicates a lack of acknowledgement of the higher au-

---

* 66 P.S. 1441. "No injunction shall issue modifying, suspending, staying, or annulling any order of the Commission, or of a commissioner, except in a proceeding questioning the jurisdiction of the Commission, and then only after cause shown upon a hearing The Court of Common Pleas of Dauphin County is hereby clothed with exclusive jurisdiction throughout the Commonwealth, of all proceedings for such injunction, subject to an appeal to the Superior Court as aforesaid."

thority of the appellate courts of this State by the Commission. While the very question of the jurisdiction of the Commission to hold hearings on the subject matter of this case was before this Court, the Commission should not have ordered a hearing. As the final order accompanying this opinion indicates, the Commission will not be permitted to hold hearings on complaint No. 18356.

We now move on to the real issue before this Court, i.e., whether the Commission, unilaterally (upon the complaint of a third person) may order a municipality supplying utility services to its citizens and to customers within a certificated extraterritorial area to extend its lines and service to customers beyond such certificated area.

A regulatory agency, such as the Commission in this case, is a creature of the legislative body which created it. It has only those powers, duties, responsibilities, and jurisdiction given to it by the Legislature. There are many instances when a regulatory agency may do things not specifically provided for in the enabling statute, but always these kinds of acts must come within the legislative intent. Always the regulatory agency is subject to (1) the Constitution, (2) its limited powers set forth in the enabling statute or other applicable legislation, and (3) review of its acts or adjudications by the appellate courts.

A municipality rendering certain utility services likewise is controlled by the statutes creating and empowering it. It is clear that a municipality furnishing water service solely within its political boundaries is not subject to regulaton by the Commission. The Legislature specifically excluded from the Public Utility Law, *supra*, the regulation of such municipal utilities by the Commission. See 66 P.S. 1102(9), (15) and (17). It is equally clear that the Commission is vested with the authority to regulate a municipal utility when

the municipality extends its service to customers outside of its political boundaries. Public Utility Law, *supra,* 66 P.S. 1171. An analysis of that same Act at 66 P.S. 1102, 1122, 1141 and 1171 brings one to the conclusion that a municipality rendering a utility service outside of its boundaries becomes a public utility subject to all of the regulatory powers of the Commission, the same as the Commission has over privately-owned public utilities. The instant case calls upon us to delineate the perimeter of that mandated regulatory power.

The jurisdiction of the Commonwealth Court in the matter at hand is predicated upon Section 1111 (66 P.S. 1441) of the Public Utility Law, *supra,* as amended by Section 14(a)(55) of the Commonwealth Court Act, Act No. 185 of 1970, Act of January 6, 1970, P. L. , 17 P.S. 211.14(a)(55) and upon Section 508(a) (55) of the Appellate Court Jurisdiction Act, Act of July 31, 1970 P. L. (Act No. 223) 17 P.S. 211.508 (a)(55). The Supreme Court of Pennsylvania held in *Pennsylvania P.U.C. v. Akron Borough, supra,* that the Court of Common Pleas of Dauphin County sitting as Commonwealth Court could properly entertain the instant case under Section 1111 of the Public Utility Law. Subsequent amendment of the statutes as aforementioned transfers jurisdiction to the newly created Commonwealth Court of Pennsylvania.

As stated before, the crux of the issue in this case relates to the regulatory power and jurisdiction of the Commission over a municipal water utility operating outside of its political boundaries, yet within its previously certificated service area. Specifically, we are concerned with the presence or absence of jurisdiction in the Commission to order a municipally owned water utility to extend service to customers outside of its previously certificated service area.

Our research indicates that prior to 1966, the Commission pursued a course of conduct whereby it allowed municipal utilities to apply for and be granted certification of their respective service areas, and based upon opinions of the Commission predating 1966, such a utility could thereby limit its area of service. This procedure was accepted as a manifest declaration that the utility undertook to service only a defined area and could not be subjected to extensions outside of that certificated area. In effect, the theory was that the utility had dedicated its facilities to the service of only those customers within its certificated boundaries.

The case of *Hoffman v. City of Erie*,* 42 Pa. P.U.C. 656 (1966) saw the Commission depart from this procedure. There, the City of Erie was ordered by the Commission to extend service to customers beyond its previously certificated service area. The adjudication of the Commission in that case, which is one of its prime supports for its actions in this case, was erroneous. In *Hoffman*, as here, the Commission relied upon *Altoona v. Pa. P.U.C.*, 168 Pa. Super. 246, 77 A. 2d 740 (1951), which is a case where the municipal utility had *not* secured a certification from the Commission. In *Hoffman*, as here, the Commission relied upon *Reigle v. Smith*, 287 Pa. 30, 134 A. 380 (1926), which is a case where the complainant customer seeking service was located immediately adjacent to and along an existing utility service line, so as to be determined to be within the dedicated service area. Neither of these two cases is controling in this case, as has already been noted by the Pennsylvania Supreme Court in *Pa. P.U.C. v. Akron Borough, supra.*

The Commission also relies upon Sections 401 (66 P.S. 1171), 413 (66 P.S. 1183), and 902 (66 P.S. 1342)

---

* The *Hoffman* adjudication of the Commission was not appealed to any court, and we find no appellate court decision directly on point to which we can refer for precedent.

of the Public Utility Law, *supra,* as its authority for its jurisdiction to hold a hearing on a complaint requesting an extension of municipal utility service beyond the certificated area. In none of these sections can we find a direct grant of jurisdiction to entertain such a proposal, and sound reasoning will not permit such an inference of legislative intent.

Section 202 of the Public Utility Law, *supra,* (66 P.S. 1122) provides in pertinent part:

*"Upon the application of any public utility and the approval of such application by the Commission,* evidenced by its certificate of public convenience *first had and obtained,* and upon compliance with existing laws, *and not otherwise,* it shall be lawful:

"(a) for any public utility to begin to offer, render, furnish or supply within this Commonwealth service of a different nature or to a different territory than that authorized by—

"(1) a certificate of public convenience heretofore or hereafter granted under this act or under the Public Service Company Law, January 6, 1913 (P. L. 1374).

"(g) for any municipal corporation to acquire, construct, or to begin to operate, any plant, equipment, or other facilities for the rendering or furnishing to the public of any public utility service *beyond its corporate limits."* (Emphasis added.) Here the Legislature set forth the procedure to be followed by the Commission, and nowhere do we find any authority for doing more than what the Legislature there described. It is at the time of the hearings on the application for a certificate of public convenience that the Commission has complete control over the extraterritorial service area of a municipal utility. If the Commission does not believe that the proposed service area is proper, it may refuse the application, if the utility is not willing to amend its proposal or accept conditions the Commission may propose to place in the certification; but the Commis-

sion does not have any statutory power to force any municipal utility to accept any greater service area than it is willing to accept. Once the certificate is granted the Commission has complete power to reasonably control the extension of service within the certificated area.

If we were to hold, as the Commission argues, that a municipal utility is subject to the unilateral power of the Commission, subject only to the qualification of reasonableness, to order extensions of service outside of the certificated area the utility is willing to serve (and as approved by the Commission in its certification), then the certification sections of the Public Utility Law are meaningless. Under such a proposed ruling, the Commission would become the super board of directors (and the super legislative body of municipalities providing utility service) of all municipal utilities in the complicated field of service territories. Such a ruling would retard the ability of such utilities to attract investors for the necessary funds to develop or improve utility plant and service. One of the things an investor in utilities securities looks at is the stability of the service area. A certification gives some protection; an open-end certificate controlled by the Commission does not. It is conceivable that constitutional property rights may be violated by such unilateral power as argued by the Commission, but we need not rule on that point in this case. We can find no legislative direction or intent to give the Commission such power or jurisdiction. To permit the Commission under the facts of this case to hold hearings and order an extension beyond its prior authorization, after lulling Akron into a false sense of security in its service area boundaries, smacks of an unfairness not intended by the Legislature.

Uppermost in our consideration is the desire to strike the fine and equitable balance between the broad public rights as advanced by the Commission and the

limited and narrower interests of the utility. The public must receive adequate, reasonable and fair utility service, while at the same time utilities must be encouraged to continue to expand and to improve. Occasionally this calls for a determination of the degree to which the Commission is empowered to order an act to be done by an objecting utility. It is elementary and beyond contention that a regulatory agency must be given discretion in carrying out its mandated tasks. Nevertheless, this discretion must be tempered and closely supervised as it nears the gray and often subtle area of arbitrariness and illegality.

It is of no binding import to this Court that the Commission altered its certification procedure in 1966. This alteration is viewed as one of very serious consequence and has not been tested previously by an appellate court. The essence and effect of the Commission's change was to deprive a municipal utility of any effective way whereby it could limit the scope and extent of its public responsibilities. The wide-ranging interests and welfare of the public are benefited by the comprehensive powers vested in and executed by the Commission. Nevertheless, protection against Commission action not permitted by the enabling statute must be afforded to those municipal utilities coming under its regulation.

We do not take issue with the principle that the Commission has power to order extensions of service within areas previously being served* or certificated as long as the doctrine of reasonableness is present and applied. When, however, a municipal utility has clear-

---

* This refers to municial utilities which have *unilaterally* extended service outside of their political boundaries without certification. Having so acted, they are open to orders of the Commission to extend service under reasonable circumstances and conditions. See our opinion in the case of *Borough of Phoenixville v. Pennsylvania P.U.C.*, which is being filed contemporaneously with this opinion.

ly expressed its desire and intent to limit its service responsibilities outside the geographic area of its municipal boundaries, and it has expressed this formally to the appropriate regulatory agency, which in turn approves that limitation by its certification, then the agency unilaterally cannot order an extension thereafter outside that certificated area.

Nothing we say in this opinion should be construed to mean that the Commission may not order a hearing on questions of adequacy of service or extension of service lines within a certificated area. This opinion is restricted to those cases where the Commission attempts to hold hearings clearly for a purpose beyond its legislative authority and jurisdiction.

Since there is applicable statutory remedy available under the Public Utility Law, *supra*, in Section 1111 (66 P.S. 1441), a Writ of Prohibition as argued for by the Commission would be inappropriate.

Based upon the above analysis of the facts and the law, we therefore

### ORDER

AND NOW, this 5th day of August, 1971, the motion for judgment on the pleadings filed by the Borough of Akron is hereby granted, and it is ordered that the Pennsylvania Public Utility Commission, its Chairman, members and agents are hereby enjoined and restrained from conducting or holding any proceedings on Commission complaint No. 18356 and from issuing an order or adjudication granting the relief requested in complaint No. 18356.

---

DISSENTING OPINION BY JUDGE MANDERINO:

I dissent from the majority's decision to grant a permanent injunction against the Public Utility Commission (P.U.C.) because nowhere in the record before us has it been established that the granting of the injunction is necessary to avoid irreparable harm and

also because the P.U.C. does have subject matter jurisdiction.

It is obvious that no irreparable harm can result because there is an adequate remedy before the P.U.C. to test the questions which have been raised by the plaintiff. If the P.U.C. incorrectly answers the questions raised by the plaintiff, the P.U.C. will then be subject to judicial review. The long established judicial doctrine that a court will not issue a permanent injunction if there is clearly some other remedy which can be pursued without any irreparable harm should be followed unless the Legislature has said otherwise.

The Borough of Akron questions whether the P.U.C. can order Akron to provide water services to certain customers outside of the Borough of Akron which are not now being served by Akron. The P.U.C. has not yet decided whether Akron should be ordered to provide the service. The P.U.C. was about to consider this question under its administrative procedures when Akron filed a complaint in equity asking that the P.U.C. be stopped from considering the question because it had no right to do so under the law. If Akron had not asked for injunctive equitable relief, the P.U.C. would have arrived at a final answer. The P.U.C.'s answer may or may not have been satisfactory to Akron. In either case, the P.U.C.'s order would have been appealable to the courts. If the courts would then decide that the P.U.C. should not have even considered the questions, (no subject matter jurisdiction) the P.U.C. would be reversed. There is no reason why a court of equity should interfere with the normal procedure of awaiting a final decision by the P.U.C. which would then be subject to appellate review in the courts. Such interference, by a court of equity, with normal administrative proceedings is unheard of unless the plaintiff, who is asking the court of equity to interfere, can show why an injustice would occur if the interference does

not take place immediately. The majority decision violates this time-honored basic principle and stops another administrative proceeding without a single shred of evidence in the record that Akron would suffer any irreparable harm if this court failed to interfere and refused to issue an injunction stopping the proceedings before the P.U.C. In fact, from the evidence in the record, it can be stated unequivocally that there could not possibly be any irreparable harm to Akron while it pursues its adequate remedy at law. A potential water customer located outside the Borough of Akron wants the P.U.C. to order Akron to provide water service to him. Until the P.U.C. orders Akron to do so, and Akron's rights to appellate review have been exhausted, Akron may not be required to do anything. Until then, it does not have to expend any monies or construct any facilities. All Akron must do, if this court were to refuse the permanent injunction which stops the proceedings before the P.U.C. is to defend its position before the P.U.C. by challenging the P.U.C.'s right to order Akron to provide the service in question.

Akron, of course, had every right to file a complaint before this court as an equity court *asking* for an injunction. As pointed out by the majority opinion, this court has subject matter jurisdiction over such a complaint under the Public Utility Law (Act of May 28, 1937, P. L. 1053, art. XI, §1111; 66 P.S. 1441). While that section does give this court subject matter jurisdiction, it *does not* say anything about changing the time-honored rules for granting an injunction. It does not give this court statutory authority to grant injunctions without the normal prerequisites which a court of equity demands before stopping a legal proceeding already in progress.

Section 1111 of the Public Utility Law (66 P.S. 1441) does not say anything about changing the equitable principles which should be followed before grant-

ing an injunction. That section was obviously intended to limit (*not expand*) the court's power insofar as issuing injunctions is concerned. That section takes away from this court the right to issue an injunction even if the traditional equitable principles are present, *unless* the jurisdiction of the P.U.C. is being questioned. The section does not state that *if* the jurisdiction of the P.U.C. is being questioned nothing further is needed or has to be established in order to grant a permanent injunction. The clear wording of Section 1111 makes it obvious that it was not intended to suspend the traditional requirements for granting injunctive relief.

Section 1111 of the Public Utility Law reads as follows: "No injunction shall issue modifying, suspending, staying, or annulling any order of the Commission, or of a Commissioner, except in a proceeding questioning the jurisdiction of the Commission *and then only after cause shown upon a hearing.*" (Emphasis added.)

While Section 1111 takes away from this court the right to issue any injunction except when a question of jurisdiction is involved, it goes further to state that, even when a question of jurisdiction is involved, there must be ". . . cause shown upon a hearing."

This court grants the injunction pursuant to a motion for judgment on the pleadings. The pleadings do not state any facts which even remotely indicate that a "cause" has been shown—cause meaning, as it always has in a request for injunctive relief, that irreparable harm will follow if the complainant is required to pursue some legal remedy. That is not the situation before us.

The complaint in this case was previously examined by the Supreme Court. *Pennsylvania Public Utility Commission v. Borough of Akron*, 441 Pa. 9, 270 A. 2d 393 (1970). The only thing the Supreme Court decided was that this court had subject matter jurisdiction be-

cause a substantial question as to the P.U.C.'s jurisdiction had been raised. The Supreme Court stated that ". . . all we are required to determine at this stage and all we do decide is that because a substantial question as to the P.U.C.'s jurisdiction has been raised equity has jurisdiction over the cause of action raised by the Borough's complaint under Section 1111. . . ." 441 Pa. 9, 270 A. 2d at 396.

Deciding that this court has subject matter jurisdiction is not the same as deciding that this court should grant the relief requested in the complaint. In fact, the Supreme Court in its decision stated ". . . we are not deciding whether a final decree prohibiting the Commission from proceeding would be affirmed. . . ." 441 Pa. 9, 270 A. 2d at 395.

Even assuming the validity of the majority's conclusion that the P.U.C. did not have subject matter jurisdiction to order Akron to extend its service, there is time enough, after a P.U.C. order, for Akron to file its proper appeals under normal legal procedures.

I would therefore refuse the injunctive relief requested and allow the P.U.C. to conduct its hearing and proceed to a final order which has never been issued.

Since the majority has given its views on the merits of the P.U.C.'s authority, I must comment that I dissent also from the majority's holding that the P.U.C. does not have the authority to order Akron to extend service to new customers if such extension is found to be reasonable.

I agree with the majority that a municipal corporation operating within its municipal boundaries does not come under the jurisdiction of the P.U.C. so far as its service is concerned. I also agree with the majority that if a municipal corporation extends service beyond its municipal boundaries, the P.U.C. then has jurisdiction to determine the extent of the service that should be provided.

My disagreement with the majority is in its conclusion that a municipal corporation has the right under the law to file an application for a "certificated service area" and that if such an area is approved by the P.U.C., the P.U.C. can never unilaterally change such "certificated service area."

I find nothing in the Public Utility Law which spells out the concept of "certificated service area" when a municipal corporation extends its service beyond its municipal boundaries. Section 202 of the Public Utility Law (66 P.S. 1122) which the majority quotes, states that upon application of a public utility and the approval by the P.U.C., the public utility can receive permission to extend its service "beyond its corporate limits". There is no authority in the Section quoted for either the municipality or for the P.U.C. to establish a "certificated service area" which will be binding for all times. The concept of a "certificated service area" is created by the majority opinion not by the Legislature.

The law simply states that the public utility must obtain a certificate of public convenience before it goes "beyond its corporate limits". The P.U.C. under Section 902 (66 P.S. 1342) is given authority to modify its orders at any time. It is given broad control over the municipal corporation in the public interest. The P.U.C. issues "certificates of *public convenience*"; not "certificates for the *convenience of public utilities*."

If, as the majority holds, a municipal corporation and the P.U.C. can mutually agree at a given point in time to establish a "certificated service area" which can never be changed regardless of the public interest, we are ignoring completely the whole purpose of the Public Utility Commission Act and its overriding purpose to protect the public interest. We are not dealing here with a private company. We are dealing with a municipal corporation which is subject, in the public

interest, to the overriding scrutiny of the P.U.C. The majority points out that if the P.U.C. had this authority, it would become the Board of Directors of the municipal corporation. The P.U.C. would not become the Board of Directors of the municipal corporation, but the P.U.C. does share with the Board of Directors the control of its operation *because of the public interest*. There is no question that the P.U.C. can, in much of its jurisdiction, affect the financial standing of a public utility. The P.U.C. has authority to control rates, refunds, extensions of service and other items. For instance, a utility does not have the right to suspend service even in an area where it may be losing money without the P.U.C.'s permission. This could certainly affect a utility's financial standing. There are many orders of the P.U.C. which affect the finances of a public utility—this has never been reason for denying the P.U.C. its statutory authority.

Of course, as the Supreme Court stated in *Altoona v. Pennsylvania Public Utility Commission*, 168 Pa. Super. 246, 77 A. 2d 740 (1951), the P.U.C. must be guided by reasonable principles. The P.U.C. cannot arbitrarily order, even in this case, a municipal corporation to enlarge a service order which is entirely different from the area which is currently being serviced.

The danger of the majority holding can be seen when we look at a case such as the one presently before us. Akron is servicing a certain area in an adjoining municipality. Let us suppose that one additional dwelling were constructed within three feet of the so-called service area presently existing and that one individual potential customer asks to be serviced and is refused. Can we say that we are serving the purpose of the Public Utility Law and the purpose of the P.U.C. by denying to the P.U.C. the right to order utility service to be given to that one single dwelling? The majority seems to feel that to give the P.U.C. the authority

to do this would be to give the P.U.C. authority to make a much broader order and mandate that the municipal corporation extend its service not to just one customer, but perhaps to ten thousand. This is entirely a matter of reasonableness, as was stated by the Supreme Court in *Altoona, supra.*

I agree that the P.U.C. cannot order a municipal corporation to give service to customers outside the area which it is currently servicing. The real question is who determines the logical area being serviced. The majority seems to feel that this area has already been defined by the concept of a "certificated service area". Such a concept is not found in the Public Utility Law. Simply because, in 1958, the P.U.C. issued an order giving permission to Akron to extend its service in a specifically delineated area, does not mean that the P.U.C. even had the authority to specifically delineate the area with absolute finality for all time. Nor does it mean that the door is open for the P.U.C. to undelineate the area and broaden its scope in any arbitrary manner. All we are saying here is that the actions of the P.U.C. twelve years ago cannot interfere with the public interest *today.* Nor can the action of the P.U.C. today interfere with the interest of the municipal corporation in any unreasonable way.

The request for injunctive relief by Akron should be denied and judgment entered for the Public Utility Commission.