Western Pennsylvania Water Company, Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Appellee.

534

Argued September 10, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Petition for reargument denied, December 5, 1973.

*William E. Zeiter,* with him, of counsel, *Morgan, Lewis & Brockius,* for appellant.

*Philip P. Kalodner,* Counsel, with him *Dominic J. Ferraro,* Assistant Counsel, for appellee.

OPINION BY JUDGE KRAMER, November 16, 1973:

This is an appeal filed by the Western Pennsylvania Water Company (Water Company) from an order of the Pennsylvania Public Utility Commission (PUC) dated May 1, 1973, in which an application for a certificate of public convenience was approved.[1]

In its application, the Water Company noted that since its incorporation in 1904, it had acquired the franchises and properties of other water companies, one of which had been incorporated for the purpose of supplying water to the public in the Township of Summit, Butler County. It also noted that over the years it had acquired extensions of its charter and its PUC certificates. The purpose of the application was to seek the grant of authority, by the PUC, to furnish water service in Summit Township in an area constituting a 2,500 ft. stretch of Portman Road, a distance of 300 feet on either side of the center line of the road. The application clearly sets forth the metes and bounds of the service area for which a certificate was sought.[2]

---

[1] The PUC issued its short form order on February 13, 1973, from which the Water Company filed an appeal, and thereafter on May 1, 1973, the PUC filed its long form order, after which the Water Company again filed an appeal so as to protect its appeal from both orders.

[2] The purpose behind the application was to seek authority to furnish water to 17 residents along Portman Road, who had experienced limited and erratic flows of poor quality water from their private water supplies. These 17 residents had deposited $15,300 as a nonrefundable contribution to the Water Company to secure the water supply. Pending this appeal, the PUC and the Water Company entered into a stipulation whereby the Water Company

The application was duly publicized and was uncontested. The PUC held no hearing in this matter. In its short form order, the PUC stated that after a full investigation of the matter, it found the granting of the application to be "necessary or proper for the service, accommodation, convenience or safety of the public. . . ."

In addition to its order approving the granting of the certificate, the Commission, however, added a conditional clause which has brought about this appeal. For a complete understanding of the issue, it is necessary to set forth the PUC order in toto.

"IT IS ORDERED:

"1. That a certificate of public convenience issue evidencing the Commission's approval of the said application, as above determined, as described by metes and bounds in the application and shown on a map attached to the application, subject to the following condition:

"It being a condition of such certification that Western Pennsylvania Water Company recognize, and accede to, the right of the Commission to order extension of service in the future, should such be appropriate in the Commission's view." In its appeal to this Court, the Water Company charges that the PUC erred in adding the conditional clause to its granting of the certificate of public convenience because the Commission could not lawfully extend its subject matter jurisdiction beyond the territorial limits of the area certificated by using what the Water Company calls an "acceptance of jurisdiction condition." The Water Company also contends that there is no evidentiary record from which the PUC could impose the conditional clause, and that it is unenforceable because it violates the Water Com-

would proceed under the certificate to extend the water service to the 17 residents, without prejudice to either side.

pany's constitutional rights to an appeal under Section 9 of Article V of the Pennsylvania Constitution of 1968.[3]

This Court's scope of review is limited both by statute and prior case law. Section 1107 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1437, provides in pertinent part: "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights. . . ." In *Clemmer v. Pennsylvania Public Utility Commission,* 207 Pa. Superior Ct. 388, 393, 217 A. 2d 800, 804 (1966), the Court aptly described our appellate review in the following terms: "The authority of this Court to overrule an order of the Commission is limited. We may not disturb such an order except for errors of law, lack of evidence to support a finding, determination or order of the Commission, or violation of constitutional rights. . . ." In our recent opinion in the case of *Pennsylvania Power & Light Company v. Pennsylvania PUC* (No. 398 C.D. 1972, filed October 12, 1973) 10 Pa. Commonwealth Ct. 328, 131 A. 2d 151 (1973), we reaffirmed this description of our scope of review.

At this place, we must also note that on September 19, 1973, our Supreme Court in *Borough of Akron v. Pennsylvania Utility Commission* (No. 20 May Term, 1972) 453 Pa. 554, 310 A. 2d 271 (1973) vacated an original jurisdiction decree of this Court[4] and remanded

---

[3] Art. V, §9 provides: "There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law."

[4] See 2 Pa. Commonwealth Ct. 625 (1971).

that case back to the PUC for the purpose of a hearing on the question of the extension of a municipal utility's lines into an extraterritorial service area. Our careful reading of that Opinion discloses that our Supreme Court did not make any holding which would control the result in this case. As a matter of fact, the Court in that case stated: "The question of power in the Commission to order an unwilling municipality to provide water service beyond its certificated extraterritorial service area is of first impression and is difficult. . . ." 453 Pa. at 563, 310 A. 2d at 276 (1973).

Although the question of whether a public utility (or a municipal utility operating outside its municipal boundaries) can be ordered by the PUC, through unilateral action of the PUC, to extend its public service beyond its certificated territory has not been finally decided in this Commonwealth, this Court spoke on this subject in *Akron v. Pennsylvania Public Utility Commission*, 2 Pa. Commonwealth Ct. 625 (1971).[5] We have reviewed our holding in the *Akron* Opinion as compared with the record before us, and we believe that everything we said there is equally applicable to this case.

A regulatory agency, such as the PUC, is a creature of the legislative body which created it. It has only those powers, duties, responsibilities, and jurisdiction given to it by the Legislature. There are many instances when a regulatory agency may do things not specifically provided for in the enabling statute, but this type of act always must come within the legislative intent. The regulatory agency always is subject to (1) the Constitution, (2) its limited power set forth

---

[5] Vacated, 453 Pa. 559, 310 A. 2d 271 (1973). It would appear to be a fair statement that the crux of the Supreme Court's holding in vacating this Court's order is that this Court erred by deciding the case on the merits instead of remanding it to the Commission.

in the enabling statute or other applicable legislation, and (3) review of its acts or adjudication by the appellate courts.

The Water Company, being a public utility and subject to the Public Utility Law, 66 P.S. §1101 et seq., is not permitted to serve, under the provision thereof, any customers or areas other than those certificated by the Commission. For example, Section 202 of the Public Utility Law, 66 P.S. §1122 states:

"Upon the *application of any public utility* and the approval of such application by the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, and not otherwise, it shall be lawful:

"(a) For any public utility to begin to offer, render, furnish or supply within this Commonwealth service of a different nature or to a different territory than that authorized by—

"(1) A certificate of public convenience heretofore or hereafter granted under this act or under The Public Service Company Law, July 26, 1913 (P. L. 1374). . . ." (Emphasis added.) Our reading of the quoted provisions of Section 202 leads us to the conclusion that a public utility may not serve any territory beyond that duly certificated by the PUC,[6] and further, the Legislature made it clear that the PUC could not unilaterally extend the service area beyond that certificated area. We fully recognize that in Sections 203, 902 and 1007 (66 P.S. §§1123, 1342 and 1397 respectively) the Commission was granted the general power to rescind or modify its orders and to impose "such conditions as it may deem to be just and reasonable." (66 P.S. §1123.) We do not read into any of these provisions, upon which

---

[6] Section 1401, 66 P.S. §1531, also provides for service areas which were in existence prior to January 1, 1914 by way of the Grandfather Clause.

the PUC relies, an absolute power in the PUC to amend, modify its orders, or to impose conditions without hearings, sufficient evidence, or on a unilateral basis.

In its argument, the PUC points out that there are three types of public utility territories of service. (1) The *charter* territory is found in the corporate charter of the corporate utility. Under the present law (Business Corporation Law, Act of May 5, 1933, P. L. 364, art. II, §204, as amended, 15 P.S. §1204(a)(3)) a public utility could now be incorporated with a charter territory for the entire Commonwealth. (2) A *certificated* territory is one which is governed by the Public Utility Law, under which lawful utility service may be rendered only within, and in accordance with, the certificated authority issued by the PUC. The only exceptions to this general rule are municipalities operating within their municipal limits, and utility service preserved under the Grandfather Clause mentioned above. (3) The *service* territory is the actual area within which the public utility is rendering its service. The service territory may be much smaller than either the charter territory or the certificated territory.

The PUC in this case would have us hold that its authority to order extensions of service is restricted only by the charter territory of the Water Company. Although the PUC's argument has appeal in this case because the charter territory of the Water Company extends throughout the entire township, as a matter of principle the PUC's argument must fail for the reason that if the charter territory was the controlling feature, then there would be no need for the certificate of public convenience. The service territory is certainly not controlling for the reason that once the public utility makes an application to serve within the certificated territory, it subjects itself to the jurisdiction of the PUC to all questions of service, including extension of service within the certificated area. However, even in

these cases, the order of extension of service by the PUC must be based upon evidence presented, a record made, and findings and conclusions based thereon. Such extensions must be reasonable.

Public utilities service has developed over the past 50 years in this Commonwealth to such an extent that we take them for granted to be somehow an arm of government. We must never lose sight of the fact that most public utilities, such as the Water Company in this case, are privately owned by investors willing to invest their money in property devoted to the public service. Whether the investors be stockholders or bond holders, they are interested in stability of the service area of the public utility in which they have invested. To permit the PUC to unilaterally order a public utility to extend its service lines beyond the certificated service area upon which the utility has based its financing would create an unstable corporate venture, which ultimately would work to the disadvantage of the public. We agree that a certificate of public convenience is for the protection of the public, but we disagree with the PUC's observation that a certificate of public convenience has no relevance to the protection of the public utility.

As we read the conditional clause attached to the Commission's order approving the certificate for the Water Company, the PUC is attempting to grant itself a carte blanche power to extend the Water Company's lines and service area. The PUC in its long form opinion quite boldly and frankly states that its purpose was to circumvent this Court's holdings in *Akron v. Pennsylvania Public Utility Commission*, 2 Pa. Commonwealth Ct. 625 (1971). The PUC's opinion quoting from the dissenting opinion in *Akron*, poses the question of what would happen if there was one additional dwelling three feet from the edge of the certificated area and service was requested. That argument carries

little weight when we ask ourselves what happens if the additional dwelling is three miles from the edge of the certificated area. We believe that the Legislature, in its wisdom, resolved that matter by the careful wording it used in Section 202 of the Public Utility Law (66 P.S. §1122) wherein it said that the certificate could be approved "upon the application of any public utility." We reiterate what we said in *Akron, supra*: "If we were to hold, as the Commission argues, that a . . . [public] utility is subject to the unilateral power of the Commission, subject only to the qualification of reasonableness, to order extensions of service outside of the certificated area the utility is willing to serve (and as approved by the Commission in its certification), then the certification sections of the Public Utility Law are meaningless. Under such a proposed ruling, the Commission would become the super board of directors (and the super legislative body of municipalities providing utility service) of all . . . [public] utilities in the complicated field of service territories. Such a ruling would retard the ability of such utilities to attract investors for the necessary funds to develop or improve utility plant and service. One of the things an investor in utilities securities looks at is the stability of the service area. A certification gives some protection; an open-end certificate controlled by the Commission does not. It is conceivable that constitutional property rights may be violated by such unilateral power as argued by the Commission, but we need not rule on that point in this case. We can find no legislative direction or intent to give the Commission such power or jurisdiction. . . ." 2 Pa. Commonwealth Ct. at 634.

We also said in *Akron*: "It is at the time of the hearings on the application for a certificate of public convenience that the Commission has complete control over the extraterritorial service area of a municipal [public] utility. If the Commission does not believe

that the proposed service area is proper, it may refuse the application, if the utility is not willing to amend its proposal or accept conditions the Commission may propose to place in the certification; but the Commission does not have any statutory power to force any municipal [public] utility to accept any greater service area than it is willing to accept. Once the certificate is granted the Commission has complete power to *reasonably* control the extension of service within the certificated area. . . ." (Emphasis added.) 2 Pa. Commonwealth Ct. at 633-34.

In passing, it is of interest to note that in the conditional clause attached to the approval of the certification, the Commission speaks of its "right" to order extensions of service in the future. We are puzzled by that choice of language by the Commission. If it was intended to imply some contractual relationship on behalf of the Water Company as a result of its acceptance of the certificate containing the conditional clause, we question the power of the PUC to impose such a contractual limitation. The PUC's brief, however, indicates that the PUC intended to imply the word "power" to impose conditions as it may deem to be just and reasonable, as found in Section 203 of the Public Utility Law (66 P.S. §1123).

We agree with the PUC's observation that a certificate of public convenience is neither a contract nor a property interest under which its holder acquires vested rights. The certificate is a privilege granted by the Commonwealth. *See Day v. Public Service Commission,* 312 Pa. 381, 167, A. 565 (1933) ; *Snyder v. Pennsylvania Public Utility Commission,* 187 Pa. Superior Ct. 147, 144 A. 2d 468 (1958) ; *Paradise v. Pennsylvania Public Utility Commission,* 184 Pa. Superior Ct. 8, 132 A. 2d 754 (1957). All of these cases indicate that a utility holding a certificate of public convenience accepts it subject to the statutory provisions which per-

mit the certificate to be modified or rescinded for legal cause. These cases indicate, however, that even though the PUC has the power to amend or rescind a certificate, it may not act in an arbitrary, capricious or unreasonable manner.

It is entirely within the realm of possibility on a proper record made that the PUC could condition a certificate of public convenience to include some reasonable territory beyond that territory requested in the application of the utility. We believe that the Legislature foresaw the possibility of chaos resulting from unilateral action on the part of the PUC ordering extensions of service into territory which, in the opinion of the public utility, might work to the detriment of the public utility service within its certificated area; and therefore, the Legislature provided that the PUC could attach conditions to its orders which were "just and reasonable." As we said in *Akron, supra*: "Uppermost in our consideration is the desire to strike the fine and equitable balance between the broad public rights as advanced by the Commission and the limited and narrower interests of the utility. The public must receive adequate, reasonable and fair utility service, while at the same time utilities must be encouraged to continue to expand and to improve. Occasionally this calls for a determination of the degree to which the Commission is empowered to order an act to be done by an objecting utility. It is elementary and beyond contention that a regulatory agency must be given discretion in carrying out its mandated tasks. Nevertheless, this discretion must be tempered and closely supervised as it nears the gray and often subtle area of arbitrariness and illegality." 2 Pa. Commonwealth Ct. at 634-35.

In conclusion, we hold that the conditional clause contained in the PUC's order of May 1, 1973, is not supported by substantial evidence, is not based on any

statutory authority or power, and is unreasonably broad and vague. In view of the fact that we have determined that the PUC committed an error of law by including the subject conditional clause, we need not pass upon the constitutional issues raised by the Water Company. Therefore, under the power vested in this Court in Section 1107 of the Public Utility Law (66 P.S. §1437), we

### ORDER

AND NOW, this 16th day of November, 1973, the following portion of the order of the Pennsylvania Public Utility Commission dated May 1, 1973, at PUC application Docket No. 97550 is hereby vacated: "It being a condition of such certification that Western Pennsylvania Water Company recognize, and accede to, the right of the Commission to order extension of service in the future, should such be appropriate in the Commission's view." In all other respects, the said order of the PUC is affirmed.