505 A.2d 346

Borough of Grove City, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued October 9, 1985, before President Judge CRUMLISH, JR., Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*Woodrow D. Wollesen,* with him, *Charles F. Wheatley, Jr.,* and *William Steven Paleos, Wheatley & Wollesen,* and *Timothy R. Bonner, Wherry, Ketler & Bonner,* for petitioner.

*Louis G. Cocheres,* Assistant Counsel, with him, *David A. Christiansen,* Assistant Counsel, *Daniel P. Delaney,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Roland Morris,* with him, *Henry T. Reath* and *Robert E. Kelly, Jr., Duane, Morris & Heckscher,* for intervenor, General Electric Company.

*Steven A. Berger, Berger, Steingut, Weiner, Fox & Stern;* Of Counsel: *James R. Edgerly* and *Stephen*

*L. Feld,* for intervenor, Pennsylvania Power Company.

. Opinion by Judge Rogers, February 19, 1986:

The Borough of Grove City, Mercer County (Borough), has filed a petition for review of an order of the Pennsylvania Public Utility Commission (PUC) (1) declaring that Pennsylvania Power Company (Penn Power) is the proper supplier of electricity to the General Electric Company's (General Electric) diesel engine plant located partially within the Borough and partially in adjoining Pine Township, (2) dismissing the Borough's complaint against Penn Power for seeking to provide service within the Borough without a certificate of public convenience and (3) denying the Borough's request for an order of PUC declaring that the public interest required that the General Electric facility be served only by the Borough.

These proceedings commenced when on December 20, 1982 General Electric filed with PUC a petition for a declaratory order pursuant to Section 331(f) of the Public Utility Code, 66 Pa. C. S. §331(f), alleging that by letters dated November 16, 1982 the Borough had threatened to prohibit Penn Power from continuing electric service to the General Electric plant to the end that the Borough would provide this service by the Borough electric distribution system; that Penn Power has served General Electric's plant located in the Borough since 1970 because the Borough was unable to do so; that it, General Electric, plans to extend its plant by an addition to be principally located in Pine Township; that General Electric is about to submit to Penn Power a formal request for electric service to be delivered to the plant from a point in Pine Township; and that it, General Electric, wants to continue to be served by Penn Power because Penn

Power's annual charges will be $478,000 less than the Borough's, its service is more reliable; and because it desires to be served by a supplier whose rates and service are subject to regulation by the PUC. General Electric requested a declaration that it had the right to continued service from Penn Power. By a separate pleading, General Electric moved for a stay of any applications for abandonment of service by Penn Power.

The Borough responded to General Electric's pleadings with a petition to intervene in opposition to General Electric's request for relief; with a complaint against Penn Power for seeking to provide service to General Electric within the Borough limits; and with an application for an order authorizing it, the Borough, to serve General Electric's expanded facilities in Pine Township. In its complaint, the Borough alleged that all of the power it sells it first purchases from Penn Power and that Penn Power has exerted upon it an illegal price squeeze and engaged in other anti-competitive activities to the Borough's detriment as a supplier of electricity.

In an Answer to the Borough's complaint, Penn Power admitted that it sold the Borough the electricity which the Borough sold to its customers; Penn Power denied the Borough's charges of misconduct. In answer to the Borough's petition for an order that it, the Borough, should serve General Electric, Penn Power urged that its existing service should continue pending resolution of General Electric's and the Borough's applications.

The PUC allowed the Borough's intervention, ordered Penn Power to continue service until final action of PUC and referred the applications of General Electric and the Borough to an administrative law judge who conducted extensive hearings.

The facts material to the disposition of the cause are not in serious dispute. In 1920, Penn Power acquired certificated service rights in Pine Township, which had and still has a common boundary with the Borough. The Borough has owned and operated a municipal electric distribution system for many years before this suit by which it supplies Borough customers with power purchased from Penn Power. The Borough has not manufactured electricity since 1968.

On March 18, 1957, the Borough annexed about twenty-seven acres of land in Pine Township adjacent to the Borough line in which, as the Commission found on substantial evidence, Penn Power, as it was certificated to do, "had extended its facilities from 1928 and through the present time" and "had operated and maintained customer service entrances . . . up to and including August 17, 1957."

In 1967, PESCO, Inc., a manufacturing concern, constructed a plant within the area annexed by the Borough in 1957. In December 1967, the Grove City Borough Council adopted, and the mayor approved, a resolution reciting that PESCO, Inc. would require electric power in amounts and demand which the Borough's electric distribution system was incapable of providing but which Penn Power was able and willing to meet and resolving that Penn Power be authorized to supply PESCO, Inc. with electric power and to erect and maintain facilities within the Borough for that purpose.

General Electric acquired the PESCO, Inc. facility in 1970 and has conducted manufacturing operations there since that time. It is uncontested, as the PUC found, that Penn Power "provided electric service from 1968-1970 to PESCO, Inc. a firm which was located in the building which [General Electric] purchased in 1970." Penn Power has served General Electric since 1970.

In 1980 General Electric began to plan the reloca-
tion of manufacturing operations conducted elsewhere
to the Grove City site. These plans, which were made
public in March 1981, included the construction of a
substantial addition to the existing building and the
creation thereby of an integrated manufacturing fa-
cility, with integrated circuitry. Ninety-two percent
of the addition and seventy percent of the integrated
facility when completed would be located in Pine
Township.

In the Spring of 1981, the Borough took definitive
steps toward the construction of a substation which
had been recommended by a consulting firm some
years earlier. This substation would enable the Bor-
ough to provide General Electric the electric power
it needed. The new substation which was located in
the vicinity of the General Electric plant seems to
have been in service by September 1982. On Septem-
ber 30, 1982, Borough Council rescinded the 1967
resolution purporting to authorize Penn Power to
serve General Electric. By letter to General Electric
dated November 18, 1982 the Grove City Borough's
manager informed General Electric that he realized
that General Electric was on the horns of a dilemma
regarding the purchase of electric power, that the
dilemma must be resolved, and that it was the man-
ager's belief that General Electric wished to be served
by the Borough. Enclosed with this letter was a copy
of a letter sent to Penn Power purportedly "clarify-
ing the city's action in rescinding the PESCO, Inc.
resolution." The letter to Penn Power, also dated
November 18, 1982, and subscribed by the Borough
manager states the letter's purpose as that of clarify-
ing the Borough's intention in rescinding the 1967
resolution authorizing Penn Power to serve General
Electric and continues "Grove City Borough intends
to provide electric power service to the General Elec-

194

tric Company to begin January 1, 1983 . . . [T]here is no authorization given by Grove City Borough for Penn Power to expand the service to General Electric. Any new service for GE would require prior approval of Grove City Borough and since we now have the capacity to serve their need, no such approval has been given by the Borough.''

General Electric responded to the Borough by letter dated November 22, 1982 informing that ''[w]e have given you no reason to arrive at the conclusion concerning General Electric's position'' expressed in the Borough's letter of November 18. Penn Power responded by letter dated November 29, 1982 stating that it interpreted the Borough's letter as a request that Penn Power should cease service to General Electric; and that except for nonpayment of a bill or at the request of the customer Penn Power could not lawfully terminate service to General Electric without a Certificate of Public Convenience first obtained from PUC. Penn Power also reminded the Borough that there was only a month within which the Borough's purpose to replace Penn Power might be accomplished by either obtaining General Electric's consent or by Penn Power's securing a Certificate of Public Convenience to abandon service.

The Borough wrote again to Penn Power on December 14, 1982 stating that Penn Power needed no Certificate of Public Convenience to abandon service to General Electric and insisting that Penn Power had no right to continue to serve General Electric against the Borough's wishes.

This litigation followed on the heels of those communications.

The setting of this litigation is shown by a General Electric exhibit admitted at the hearing:

**Summary of G.E. Exhibit 1(not to scale)**

**Legend:**

Original G.E. Facility

G.E. Expansion

Annexed Area CH

Pine Township

Penn Power is certificated to serve all of the area shown on the plan. The area designated CH is that annexed by the Borough in 1957. Points A, B, and C are the suggested sites from which electricity might be delivered to General Electric. Penn Power could serve the General Electric facility from any of them; the Borough would serve from Point A.

The administrative law judge recommended that the Borough's petition that it be declared to be the sole supplier to the annexed area be granted; that the Borough's complaint against Penn Power be dismissed; that General Electric's petition for a declaratory order be dismissed; and that Penn Power be directed to abandon service to General Electric.[1]

---

[1] The administrative law judge concluded that the PUC had jurisdiction to entertain the several applications of the parties and that both Penn Power and the Borough had the right under the law to serve General Electric, the former by virtue of its still extant certificate embracing the annexed area; but that the impact upon Penn Power of losing General Electric as a customer would be less than the impact upon the Borough of being denied General Electric's business as a customer, so that the public interest inclined in favor of the Borough. The administrative law judge also decided that General Electric's preference to be served by Penn Power was of no consequence; a conclusion reached in apparent innocence of PUC holdings to the effect that where two utilities have the authority to furnish public service in the same area (as the administrative law judge concluded was the case here), the preference of the customer is largely controlling. *Columbia Gas of Pennsylvania, Inc. v. Peoples Natural Gas Co.*, 44 Pa. PUC 308 (1979) ; *Borough of Aspinwall v. Duquesne Light Co.*, 41 Pa. PUC 301 (1964).

The administrative law judge also concluded that General Electric could not legally receive service from Penn Power for use in that part of its building located in the annexed area from a point of delivery in Pine Township. The authority cited from this proposition is *Borough of Schuylkill Haven v. Manbeck*, 34 Sch. Leg. Rec. 196, 22 Pa. D. & C. 467 (1935), where the customer purchased electricity from a utility at a point in the utility's service area and then conducted it to his place of business located entirely in an adjacent borough. The borough, which also furnished electric service, complained to PUC, invoking Section 2470 of The Borough

The PUC, on appeal, declined to adopt the administrative law judge's initial decision. The PUC declared that Penn Power is the proper supplier of the General Electric plant; and it dismissed the Borough's complaint against Penn Power.

The Borough filed its petition for review in this court and all parties have argued their positions and filed helpful briefs. We have concluded that the PUC's order should be affirmed.

The Borough's case is bottomed on Section 2471 of The Borough Code of 1966, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §47471, which reads pertinently as follows:

> *Any borough may manufacture or purchase electricity for the use of the inhabitants of such borough.* Any borough owning or operating electric light plants may make contracts for supplying electricity for commercial purposes outside the limits of such borough, with the consent of the municipal and township authorities.

---

Code of 1927, a provision materially identical to Section 2471 of The Borough Code of 1966, Act of February 1, 1966, P.L. 2656 (1965), *as amended,* 53 P.S. §47471, the focal point of this case, which provides that no person shall introduce electric current without consent of the borough authorities into the limits of a borough which is furnishing electricity to its own inhabitants. The PUC dismissed the complaint because the sale by the utility to the purchaser, Manbeck, was lawful and because it had no jurisdiction to regulate what Manbeck, a private person, did with it. The Borough then sought and obtained injunctive relief from the common pleas court which concluded that Manbeck had indeed introduced electricity into the township. *Manbeck* is quite different from this case. There the areas of the borough to which Manbeck conducted the electricity purchased outside the borough were not within the utility's certificated territory subsequently annexed by the borough. Since all of General Electric's plant is within Penn Power's certificated service territory and, as the administrative law judge concluded, it may lawfully be served by Penn Power, the conclusion that the *Manbeck* case holds that such service cannot be made without the Borough's consent escapes our understanding.

*Nothing in this section shall conflict with the corporate rights of any corporation empowered to supply electricity in territory adjacent to such boroughs, or with the rights of any other borough. No person, firm, or corporation shall introduce electric current for light, heat, or power purposes, without the consent of the borough authorities, into the limits of any borough which is furnishing electric current to the inhabitants:* Provided, however, That this section shall not apply to any person, firm, or corporation manufacturing electricity exclusively for its own use: And provided further, That before any borough shall construct an electric light plant, or purchase the property of any person, copartnership, or electric light company, the question of the increase of the debt of such borough, for any of such purposes, shall first be submitted to the qualified voters of the borough, in the manner provided by law for the increase of indebtedness of municipal corporations. Nothing in this act shall be construed so as to disallow any borough operating a cable television system as of July 1, 1979 from continuing to operate the same.

The Borough contends that the phrase "no person. . . . shall introduce electric current . . . without the consent of the borough authorities, into the limits of any borough which is furnishing electric current to the inhabitants" is not limited in territorial scope to the limits of the borough as they existed at the time the legislation was passed; that the Legislature was aware of the borough's power of annexation; and that if it had intended to exclude annexed areas, the Legislature would have explicitly so provided.[2]

---

[2] The Borough further urges that its interpretation is somehow confirmed by the language of Section 2471, that "nothing in this

The Borough was so insistent that Section 2471 of The Borough Code conferred upon it the exclusive right to provide electricity within the annexed area that it contended below that the PUC had no jurisdiction. Although the Borough seems now to have abandoned this argument, we mention it as the occasion for introducing the case law which requires us to uphold the PUC's conclusion not only that it had jurisdiction but also that General Electric was entitled to continue to have the services of Penn Power.

*Borough of Lansdale v. Philadelphia Electric Co.,* 403 Pa. 647, 170 A.2d 565 (1961), is identical to this on the facts. The borough annexed an area being served by the Philadelphia Electric Company and petitioned the common pleas court for a declaration that it had exclusive authority to serve electricity in the area founded on then effective Section 2470 of The Borough Code of 1927, Act of May 4, 1927, P.L. 519, a provision materially identical to present Section 2471. The common pleas court, at 77 Montg. Co. L. Rep. 217 (1960), declared that the purpose of Section 2470 was to protect the borough from competing facilities, not to render unlawful the furnishing of electricity in the annexed territory by a utility serving the area under a PUC certificate granted long before the annexation; that Section 2470 was therefore ineffective to oust the utility; and that the issue was one within the exclusive jurisdiction of the PUC because only the PUC could revoke Philadelphia Electric's existing certificate to serve the area. The Supreme Court affirmed the order of the common pleas court

section shall conflict with the corporate rights of any corporation empowered to supply electricity in territory adjacent to such boroughs." This contention lacks force because the same, or a better, argument could be made that this provision was meant to protect the rights of utilities to continue to serve customers in their certificated territories against incursions by boroughs based on annexations.

on the ground that initial jurisdiction of matters concerning the relationship between a public utility and the consuming public is in the PUC.

In *Duquesne Light Co. v. Upper St. Clair Township*, 377 Pa. 323, 105 A.2d 287 (1954), the Supreme Court upheld an injunction enjoining a township from enforcing its zoning ordinance against the utility's transmission line project on the ground that by the Public Utility Code the Legislature expressed its policy to commit the regulation of utilities exclusively to the PUC and that the township zoning ordinance was invalid and void as applied to the utility. To the same effect, relative to zoning, is our recent case of *South Coventry Township & James Ottinger v. Philadelphia Electric Co.*, 94 Pa. Commonwealth Ct. 289, A.2d (1986).

The case of *Duquesne Light Co. v. Monroeville Borough*, 449 Pa. 573, 298 A.2d 252 (1972), is instructive on two counts. First, the Supreme Court again held that PUC has initial jurisdiction to decide cases concerning competing claims of municipalities founded upon statutes defining their powers, on the one hand and of utilities, founded upon franchises granted by the PUC on the other. Second, the Supreme Court declared that in such cases the provisions of the statute relied on by the municipality and the pertinent provisions of the Public Utility Code shall be read so as to give effect, if possible, to both. In *Monroeville* the tension was between a provision of The Borough Code empowering boroughs to define a district in which electric light wires "shall be placed underground" and the powers conferred upon the PUC generally to regulate public utilities. The Borough on the authority of The Borough Code had defined a wiring district and ordered the undergrounding of the utility wires. The Supreme Court held that to harmonize

The Borough Code with the Public Utility Code, the underground wiring provisions of the former should be read as providing that the borough might define wiring districts, but that the Public Utility Commission has the ultimate authority to determine the particulars of the implementation including wiring, feasibility and cost of the project.

Here the PUC, and we, must harmonize Section 2471 of The Borough Code with the Public Utility Code, which at 66 Pa. C. S. §§1101 empowers the PUC by Certificate of Public Convenience to authorize utilities to serve the public in defined territories and at 66 Pa. C. S. §1102(a)(2) forbids certificated utilities to abandon service without obtaining a PUC Certificate of Public Convenience.

The PUC found that Penn Power's predecessor, Pine Electric, had been certificated to serve the territory consisting of Pine Township in 1920; that this territory included the then unannexed area CH; and that Penn Power had in fact operated and maintained service entrances in the area before its annexation by the Borough. The PUC concluded on the basis of these findings that Penn Power, having introduced electricity to the annexed area CH long before the Borough annexed it, had not "introduced" electric current into that area, and therefore the limits of the Borough, in September 1982 when the Borough took steps to oust it. We agree with this analysis. We also agree with the contention of some of the respondents that Penn Power may not in any case reasonably be said to have introduced electricity into the annexed area CH later than 1968 when it began to serve PESCO, Inc. with the Borough's consent. Very simply, the first meaning of the word "introduce" is "to lead, bring, conduct or usher in esp. for the first time." Webster's Third New International Dictionary 1186 (1966). Surely Penn Power cannot be said to

have brought or conducted electric current into the Borough for the first time in 1982. Nothing in Section 2471 of The Borough Code suggests that a borough, having consented that a utility duly authorized to serve the territory may bring and conduct electric current into the borough limits, may by its fiat alone force the utility to abandon that service without recourse by the affected customers and without allowance by the PUC.

In short, we agree with the PUC that Penn Power did not after September 1982 introduce electric current into the limits of Grove City Borough.

The Borough next argues that by the Act of May 8, 1889, P.L. 136 and the Act of May 2, 1891, (Act 65) P.L. 90, boroughs were given the exclusive right to supply electric current to their inhabitants and public service companies were forbidden to enter without consent and that these rights were preserved by Section 3(d) of the Public Service Company Law, Act of July 26, 1913, P.L. 1374, and are therefore still extant. Section 3 of the Public Service Company Law provides that with Commission approval public service companies may lawfully undertake steps incident to furnishing service, with certain provisos, one of which, 3(d), is that "nothing herein contained shall interfere with or affect the right or power of a municipal corporation to continue the operation of its municipal plant or to extend the same within the territory of such municipal corporation, or any part thereof, *which is not then being supplied by a public service company. . . .*" (Emphasis supplied.) As the emphasized portion of the statute shows, the Borough's argument is only as good as its assertion, contrary to the finding of both the administrative law judge and the PUC, that the annexed area CH, had not been supplied by Penn Power before the annexation. We add that our reading of the 1889 and 1891 statutes has not satisfied

us that the Legislature thereby conferred upon boroughs exclusive rights to serve in annexed areas.

The Borough also relies heavily on an unreported decision of the Court of Common Pleas of Mercer County, *Book-Davis v. Pennsylvania Power Co.*, No. 72 December Term 1951, for the proposition that it had the exclusive right to serve the annexed area CH. In *Book-Davis* the Borough of Grove City had annexed an area which Penn Power was serving under its PUC certificate. Certain inhabitants of the area who desired to be served by the borough applied to the court for a declaratory judgment that the Borough might serve them. No challenge seems to have been made to the court's jurisdiction. The court declared that the borough might serve inhabitants of the annexed area who desired its services. While there is language in the opinion to the effect that the rights of Penn Power under its Certificate of Public Convenience were subordinate to the rights of the borough to annex part of its territory and serve the inhabitants, the court did not hold that the borough's right to serve was exclusive. That issue was not presented. The court in the course of its opinion twice noted that the Borough did not claim the exclusive right to serve the annexed area.

The Borough also contends that because the original PESCO, Inc. plant was constructed after the annexation of area CH the plant was never located in Pine Township and therefore never in Penn Power's certificated area. This is sophistical. The question is not whether the plant is in Pine Township, but whether it is in Penn Power's certificated territory. The extent of a utility's service territory may be altered only by order of the PUC. *See Western Pennsylvania Water Co. v. Pennsylvania Public Utility Commission*, 10 Pa. Commonwealth Ct. 533, 311 A.2d 370 (1973).

The Borough also relies on *Borough of Schuylkill Haven v. Manbeck,* 34 Sch. Leg. Rec. 196, 22 Pa. D. & C. 467 (1935), as authority for the proposition that should General Electric receive electric current at points B or C located in Pine Township where only Penn Power has authority, its use of the current in the original PESCO, Inc. building which is located within annexed area CH would be unlawful as constituting the introduction of electric current into the borough without its consent. As we have pointed out in the margin at footnote 1, *Manbeck* concerned a customer who received current from a utility in the utility's territory and then conducted it out of that territory into a borough which furnished service to its inhabitants. Here, as PUC properly concluded, Penn Power is authorized under its Certificate of Public Convenience to serve not only Pine Township but also the annexed area. Furthermore, as the PUC noted, its decision that Penn Power was the proper entity to serve General Electric is consistent with its holdings in other cases that where the customer's premises straddles service area boundaries the customer's choice of the utility to serve it may be controlling, citing *Borough of Aspinwall v. Duquesne Light Co.,* 41 Pa. P.U.C. 301 (1964).

The Borough, based on descriptions of events it alleges to have occurred after the record was closed in this case urges us to accept its assertion that General Electric would not be required to pay as much as $500,000 a year more for its service than for Penn Power's and to overturn PUC's determination that the choice of Penn Power as the proper supplier is in the public interest. This would not only involve us in fact finding, it would create a finding based on facts not in the record. In the same vein, the Borough, also only in its brief, implies that General Electric and Penn Power shared the Borough's assumption

that the Borough had the exclusive right to serve General Electric and that they are somehow responsible for the Borough's construction of a substation. Penn Power has denied having entertained any such assumption; General Electric has ignored the charge, but we note that General Electric commenced these proceedings close on the heels of the Borough's notice that it was to supplant Borough as General Electric's supplier. Moreover, the record shows that Penn Power had begun to plan for a substation in the mid-1970's, long before General Electric's plan for expansion became public knowledge.

We have considered all of the Borough's contentions and are not persuaded that the PUC erred at law, committed an abuse of its discretion or made findings lacking support in the record.

We affirm the PUC's order.

ORDER

And Now, this 19th day of February, 1986, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.