PEOPLE OF THE STATE OF NEW YORK EX REL. NEW YORK & QUEENS GAS COMPANY *v.* Mc-CALL ET AL., COMMISSIONERS, CONSTITUT-ING THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK FOR THE FIRST DISTRICT.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 407.  Argued November 6, 7, 1917.—Decided December 10, 1917.

An order of a state public service commission requiring a city gas company to extend its mains and service pipes to meet the reasonable needs of a growing community within the city can not be deemed arbitrary or capricious, and so contrary to the due process clause of the Fourteenth Amendment, where it appears that the company was accorded full hearing before the commission and on review in the state courts, that it is the only one authorized to serve the community in question with gas, and that the rate of return upon the cost of the extension, though low initially—from $2\frac{1}{4}\%$ to $4\%$ per annum—, will probably soon become ample with the growth of the community; and

where, moreover, the record does not show, and the company does not claim, that the comparatively small loss asserted would render its business as a whole unprofitable.

171 App. Div. 580; 219 N. Y. 84, 681, affirmed.

THE case is stated in the opinion.

*Mr. John A. Garver* for plaintiff in error.

*Mr. Godfrey Goldmark,* with whom *Mr. George S. Coleman, Mr. Arthur DuBois, Mr. William L. Ransom* and *Mr. George H. Stover* were on the briefs, for defendants in error

MR. JUSTICE CLARKE delivered the opinion of the court.

It sufficiently appearing that the Court of Appeals retained practical control over the record and judgment in this case, while the motion for reargument in that court was pending, the motion to dismiss the writ of error, on the ground that the application for it came too late, will be denied, and the case will be disposed of upon its merits.

The Public Service Commission of the State of New York for the First District ordered the New York & Queens Gas Company to extend its gas mains and service pipes in such a manner as would be "required reasonably to serve with gas" the community known as Douglaston, including Douglas Manor, which was located about a mile and a half beyond the then terminus of the company's gas mains, but within the Third Ward of the Borough of Queens, City of New York.

When this order of the Public Service Commission was reviewed by the Supreme Court at the Appellate Division, that court assumed that it had authority to review generally the reasonableness of the order of the Public Service Commission, and upon such review found the order unreasonable and annulled it.

From the decision of the Appellate Division an appeal was taken to the Court of Appeals, which reversed that decision, and held that the Appellate Division had no power under the New York law to substitute its own judgment for the determination of the Public Service Commission as to what was reasonable, under the circumstances of the case. The case is now in this court for review of the judgment entered upon the decision of the Court of Appeals and it is presented upon a single assignment of error, viz: "That the order of the Public Service Commission . . . was illegal and void, in that it deprived the above named New York and Queens Gas Company of its property without due process of law and denied to it the equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States, in requiring the said company to extend its distributing system, under great physical difficulties and at enormous expense, to an independent and remote community which the said company was under no present duty to supply with gas, when it appeared that the said Gas Company would not obtain an adequate return from the expenditure required to make such extension."

More compactly stated, this assignment of error is, that the order deprived the gas company of its property without due process of law, because obedience to it would require an expenditure of money upon which the prospective earnings would not provide an adequate return.

The Court of Appeals of New York decided that the Public Service Commission was created to perform the important function of supervising and regulating the business of public service corporations; that the state law assumes that the experience of the members of the Commission especially fits them for dealing with the problems presented by the duties and activities of such corporations; that the courts in reviewing the action of the Commission

have no authority to substitute their judgment as to what
is reasonable in a given case for that of the Commission,
but are limited to determining whether the action com-
plained of was capricious or arbitrary and for this reason
unlawful; and that it was clearly within the power of the
Commission to make the order which is here assailed.

This interpretation of the statutes of New York is con-
clusive, and the definition, thus announced, of the power
of the courts of that State to review the decision of the
Public Service Commission, based as it is in part on the
decision in *Interstate Commerce Commission* v. *Illinois
Central R. R. Co.*, 215 U. S. 452, 470, differs but slightly,
if at all, from the definition by this court of its own power
to review the decisions of similar administrative bodies,
arrived at in many cases in which such decisions have been
under examination. Typical cases are: *Baltimore & Ohio
R. R. Co.* v. *Pitcairn Coal Co.*, 215 U. S. 481–494; *Kansas
City Southern Ry. Co.* v. *United States*, 231 U. S. 423,
443–4; *Louisiana R. R. Commission* v. *Cumberland Tel-
ephone & Telegraph Co.*, 212 U. S. 414, 420–2; *Interstate
Commerce Commission* v. *Union Pacific R. R. Co.*, 222 U. S.
541–547, and *Cedar Rapids Gas Co.* v. *Cedar Rapids*, 223
U. S. 655, 668.

It is the result of these and similar decisions, that while
in such cases as we have here this court is confined to the
federal question involved and therefore has not the
authority to substitute its judgment for that of an ad-
ministrative commission as to the wisdom or policy of an
order complained of, and will not analyze or balance the
evidence which was before the Commission for the pur-
pose of determining whether it preponderates for or against
the conclusion arrived at, yet it will, nevertheless, enter
upon such an examination of the record as may be nec-
essary to determine whether the federal constitutional
right claimed has been denied, as, in this case, whether
there was such a want of hearing or such arbitrary or

capricious action on the part of the Commission as to violate the due process clause of the Constitution.

The result of the application of this rule to the record before us cannot be doubtful. The Gas Company appeared at the hearing before the Commission, cross-examined witnesses, introduced testimony and argued the case. On writ of certiorari the case was reëxamined by the Appellate Division of the Supreme Court, and it was again reviewed on appeal, by the Court of Appeals. In the matter of procedure plainly the company cannot complain of want of due process of law.

The record shows that the company at the time of the hearing had franchises authorizing it to manufacture and sell gas throughout the Third Ward of the Borough of Queens, in the City of New York, and that, it being the only company which had franchises for any part of that area, the community to which it was ordered to extend its distributing system must continue without gas if the order does not become effective.

The community of Douglaston, including Douglas Manor, was a rapidly growing settlement of three hundred and thirty houses, of an average cost of $7,500, thus giving assurance that the occupiers of them would be probable users of gas, and which, with very few exceptions, were occupied by families the entire year. While the community is described in the assignment of error as "independent and remote" the record shows that it was served at the time by franchise holding companies, which supplied water, electric light and telephone to its inhabitants, and that the number of houses had doubled within a few years.

The length of the extension ordered was about one and one-half miles but the mains of the company, which extended to the point nearest to Douglaston, were being used to almost their full capacity, and for this reason the estimated cost of making the improvement included new

mains of some eight miles in length. The engineer of the Gas Company testified that the cost of the ordered extension would be approximately $86,000, while the engineer for the Commission estimated the cost at $61,000. The Commission found that only $45,000 of the new investment required would be properly chargeable against the extension ordered, since the newer and larger mains would be available in part for other business.

On the basis of the company's estimate of the cost of the extension the income would be about 2¼% per annum, and, on the basis of the estimate by the Commission of the part of the cost properly chargeable to the Douglaston community the income would be 4%. There is no showing in the record as to the fair value of the entire property of the Gas Company used in the public service, nor of the rate of return which it was earning thereon, and therefore even if the return on the cost of complying with the order be conceded to be inadequate, this would not suffice to render the order legally unreasonable. *Atlantic Coast Line R. R. Co.* v. *North Carolina Corporation Commission*, 206 U. S. 1, 24–6; *Missouri Pacific Ry. Co.* v. *Kansas*, 216 U. S. 262; *Puget Sound Traction Co.* v. *Reynolds*, 244 U. S. 574, 580.

It is significant also that within a year preceding the hearing by the Commission the Gas Company proposed in writing to the residents of Douglaston that it would extend its mains to the settlement if they would advance $10,000, to be returned in semi-annual credits upon the amount of gas consumed.

These references to the evidence will suffice. They show this Public Service Commission ordering a public service corporation to render an important public service, under conditions such that in the aspect least favorable to the Gas Company the initial return upon the investment involved would be low but with every prospect of its soon becoming ample, and also that no claim was made by the

company that the comparatively small loss which the company claims would result would render its business as a whole unprofitable.

Corporations which devote their property to a public use may not pick and choose, serving only the portions of the territory covered by their franchises which it is presently profitable for them to serve and restricting the development of the remaining portions by leaving their inhabitants in discomfort without the service which they alone can render. To correct this disposition to serve where it is profitable and to neglect where it is not, is one of the important purposes for which these administrative commissions, with large powers, were called into existence, with an organization and with duties which peculiarly fit them for dealing with problems such as this case presents, and we agree with the Court of Appeals of New York in concluding that the action of the Commission complained of was not arbitrary or capricious, but was based on very substantial evidence, and therefore that, even if the courts differed with the Commission as to the expediency or widsom of the order, they are without authority to substitute for its judgment their views of what may be reasonable or wise. Since no constitutional right of the plaintiff in error is invaded by the order complained of, the judgment under review must be

*Affirmed.*