Phila. Rural T. Co., Appellant, v. P. S. C.

Argued May 1, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*George H. Huft*, and with him *Coleman J. Joyce*, for appellant.

*E. Everett Mather, Jr.*, Assistant Counsel, and with him *Daniel H. Kunkel*, Legal Assistant, and *John Fox Weiss*, Counsel, for appellee.

*Edward E. Dicker*, and with him *John A. Boyle*, for intervening appellee.

Opinion by Gawthrop, J., July 8, 1931:

This is an appeal from an order of the Public Service Commission sustaining a complaint filed by the Borough of Rockledge, the commissioners of Abington Township, Montgomery County, several individuals, and the local improvement associations of Rockledge

Borough, and the section of Abington Township known as Hollywood, because of the refusal of the Philadelphia Rural Transit Company, hereinafter called appellant, to extend into Hollywood its bus routes "N" and "O" which, as now operated on Huntingdon Turnpike, stop at the line which divides Montgomery County and Philadelphia County, just east of the Borough of Rockledge. The order of the commission requires appellant to extend its service over these bus lines on Huntingdon Turnpike for a distance of approximately half a mile "for a trial period of six months beginning April 1, 1931;" and to file with the commission "monthly reports showing the number of passengers riding said busses beyond the former terminus, and other operating data." The order followed a report containing specific findings of fact which are not made the subject of attack by appellant, its only complaint in this respect being that the finding, determination, report and order are unreasonable, is not sustained by the evidence, and not in conformity with law.

Appellant operates its bus lines known as routes "N" and "O" as "feeders" to the Broad Street Subway in Philadelphia and the Frankford Elevated with which they connect. Both of the high speed lines mentioned run from the junction points with these bus lines to the business section of the city. The two bus routes extend from their points of junction with the high speed lines to the section of the city known as Fox Chase, which lies at the northeastern corner of the city and near the Montgomery County line. They converge on Huntingdon Turnpike at a point just east of the Montgomery County line and terminate at the intersection of that highway and Fillmore Street at the city line. Huntingdon Turnpike runs northwestwardly across Fillmore Street. The Borough of Rockledge lies immediately northwest of Fillmore Street. The borough is bounded on the northwest by the section of

Abington Township known as Hollywood. It has a population of about 2,000 and Hollywood about 450. The effect of the order is to require defendant to extend the operation of its busses across Fillmore Street through the Borough of Rockledge on Huntingdon Turnpike to the eastern boundary of Hollywood. The distance from Fillmore Street to the proposed terminus is approximately 2,600 feet. The steam railroad of the Reading Company traverses the Fox Chase section of the city. It has a station in the city at a point approximately two blocks east from the present eastern terminus of appellant's bus line. The Reading Transportation Company, a subsidiary of the Reading Company, operates bus lines from points lying to the west of Hollywood and Rockledge to a terminus at the Fox Chase station of the Reading Company. These lines act as "feeders" to the Reading Company. They render half hourly service on Huntingdon Turnpike during the commuters' hours in the morning and somewhat less frequent service during commuters' hours in the evening. The commission found, that a large portion of the people living in Hollywood and Rockledge walk to appellant's bus terminus at Fillmore Street, rather than take a bus of the Reading Transportation Company and then transfer either to the steam line or to appellant's busses with the payment of the additional fare required by the transfer from one company to the other. It is not denied that the busses of the Reading Transportation Company get few passengers from Hollywood and Rockledge in passing eastwardly. From the evidence it seems clear that the only methods of reaching the center of the city which the residents of these sections consider practical are, (1) the Reading Transportation Company's bus and the steam lines of the Reading Company, and (2) appellant's bus and the high speed lines of the Broad Street Subway, or the Frankford Elevated. If a resident of these sections desires to reach a point in

central Philadelphia other than a point sufficiently close to the lines of the Reading Company for him to use the railroad, and desires to reach the Broad Street Subway or the Frankford Elevated, he must either walk to Fillmore Street or wait for and take the bus of the Reading Transportation Company and transfer to one of appellant's busses with the consequent payment of an additional fare.

The first contention of appellant is that the order of the commission is unreasonable. In the light of the facts above stated, we are unable to find any such manifest and flagrant abuse of discretion as to require its reversal. As we have said many times before, this court is not a second administrative body and we have no power to substitute our judgment for that of the commission in the decision of such questions and reverse the determination of the commission, unless the order is clearly unreasonable and not in conformity with law. See Sherman v. P. S. C., 90 Pa. Superior Ct. 523, and cases there cited. Appellant points to the fact that the testimony of one of its witnesses, which was not met by any countervailing proof, was to the effect that the cost of operating its busses over the additional route would be $27,000 per year, and that there would be no appreciable increase of revenue to offset it. This result was arrived at by mathematical calculation based on the experience of the witness as to the cost to appellant of bus operation per mile. The commission was not bound to accept the opinion of this witness as verity. This is particularly true in view of the fact that the witness testified that in extending these bus lines to Hollywood in accordance with the order of the commission, appellant would be required to operate 265 additional bus miles per day. Later he testified that appellant's busses made 140 trips per day. On this basis the total additional mileage would be less than 140 miles and the additional

cost per year would be a little more than half of $27,000. But in any event the extension of service of a public utility is not dependent on the profit which may be reasonably expected from it. In proper cases an extension may be ordered though the immediate result of the expansion may entail financial loss to the company: Sherman v. P. S. C., supra. A public service corporation may not "pick and choose" only presently profitable territory covered by its franchise. If a portion of the territory served is not profitable, but the entire service produces a fair return on the investment, the utility may still be required to serve the unprofitable portion, if the rendering of such service does not result in an unreasonable burden on its other service. The order is but temporary and evidently was made in that form in order that the question, whether appellant should be required to continue the service on the extension, may be determined in the light of results at the end of six months. Appellant does not contend that the order is so burdensome as to amount to confiscation of its property. It made no attempt to prove its total investment in its business, nor its total revenues and expenses, nor the relation which the extension bears to its total business. We are not persuaded that the order made by the commission in solving the administrative question before it is unreasonable, arbitrary or capricious.

The second contention of appellant is that the commission had no power to order it to extend its lines into new territory when its right under its charter to make such an extension is merely permissive and not mandatory or compulsory. Appellant's charter authorized it to own, lease or operate motor vehicles as a common carrier for hire on certain routes in the County of Philadelphia (not involved here) and "between such other points in Philadelphia County, Montgomery County, Delaware County and Bucks

County, or any of them, by such other route or routes as shall hereafter be approved by the Public Service Commission of the Commonwealth of Pennsylvania, as evidenced by its certificate or certificates of public convenience." Appellant contends that since its right to operate over routes "N" and "O" is the result of its having gone to the commission with the request for permission to do so, these routes cannot be modified nor extended by the commission unless requested by appellant. It denies the power of the commission to require such modification or extension in the interest of the public convenience. It says that until it elects to exercise the specific right granted in its charter to extend its lines, and applies for a certificate of public convenience to operate additional routes, the commission is powerless to require it to extend a route which it is now operating. It relies upon the decision of this court in Lycoming Edison Co. v. Public Service Commission, 67 Pa. Superior Ct. 608. In that case the Commission had ordered the Catawissa Railroad Company to reconstruct a siding over the land of the Lycoming Edison Company to reach the property of the complainant before the commission. The exercise of the right of eminent domain by the Catawissa Railroad Company was necessary in order to comply with the commission's order. The question before this court was whether or not the legislature had given the Public Service Commission the power to compel the exercise of its right of eminent domain. It was answered in the negative, the court holding that there is nothing in Art. II of the Public Service Act, which deals with the duties and liabilities of public service corporations, and Art. V, which concerns the powers and duties of the Public Service Commission, expressly conferring the power to make the order appealed from; and that these general sections of the act show no intent to take from the carrier the dis-

cretion to decide whether or not the power of eminent domain should be exercised by it. The opinion in that case does not refer to the question of the general regulation by the commission of the service of a public service company. Art. II, Section 1, of the Public Service Act makes it the duty of every public service company to furnish service "reasonably adequate and practically sufficient for the accommodation of the public;" and the duty of every common carrier to run its vehicles "to and from such stations or points as the commission, having regard to the general convenience and safety of the public, may require;" and to "make any other arrangements and improvements in its service which the commission may lawfully and reasonably determine and require." Section 5 provides: "The commission shall have power to make all such......extensions and improvements in and about their facilities and service as shall be reasonably necessary and proper for the safety, accommodation, convenience and service of their patrons, employes and the public." We consider this to be direct legislative sanction for the order in the present case. Appellant's charter did not specify any particular route to which the operation of its busses should be limited, but gave it, in addition to the right to operate between certain termini, the right to operate "between such other points in Philadelphia County, Montgomery County, ...... as shall hereafter be approved by the Public Service Commission." The case is radically different from one in which a proposed corporation asks for and receives a charter to operate only over a definite route and between fixed termini. In such a case there would be much force in the contention that the Public Service Commission would have no power to require the corporation to extend its route. But here appellant obtained by its charter not only the right to operate over a certain route but also to extend that route and to

operate other routes in certain specified territory with the approval of the Public Service Commission. We do not doubt that under the terms of such a charter the commission has the power to compel a public service company to extend its service into any part of the territory in which it is authorized to do business, and that an application by the company to the commission is not a condition precedent to an order requiring such an extension. The right to apply to the commission for the privilege of extending service in the territory mentioned in the charter carries with it an obligation to make extensions which the commission determines to be reasonably necessary for the accommodation of the public.

Lastly, appellant contends that "to compel it to operate the extension involved, which is entirely beyond its profession of public service, would constitute such a taking of its property without compensation as is repugnant to the due process clauses of the Pennsylvania and Federal constitutions." For reasons above stated we cannot agree to the proposition that the extension involved is beyond appellant's profession of public service. To us it seems clear that it "professed" to be willing to render service anywhere in the territory which it undertook to pre-empt by accepting a charter in the form it did. It had a franchise authorizing it to operate bus lines throughout Montgomery County and in other places beyond the limits of its present line, if the commission approved an extension or extensions. The case is not one in which the company was compelled to extend its route in such a manner as to require it to engage in a new and additional enterprise not within the contemplation of its charter. Therefore, the principle followed in Atchinson T. &. S'. F. R. Co. v. Railroad Commission, 173 Cal. 577, P. U. R. 1917, B. 336, relied on by appellant, that to compel a railroad company to apply its

property to the construction and operation of a line of railroad which it does not desire to construct or operate is to take its property, has no application. As heretofore stated, there is no showing in the record as to the fair value of the property of appellant used in the public service, nor of the rate of the return which it was earning thereon, and therefore, even if the return on the cost of the installation of the new service and compliance with the order be conceded to be inadequate, this would not render the order legally unreasonable or amount to depriving appellant of its property without due process of law. See People v. McCall, 245 U. S. 345, 62 L. Ed. 337.

The appeal is dismissed and the order of the commission affirmed.