471 Pa. 347 (1977)
370 A.2d 337
WESTERN PENNSYLVANIA WATER COMPANY
v.
PENNSYLVANIA PUBLIC UTILITY COMMISSION, Appellant.
Supreme Court of Pennsylvania.
Argued May 5, 1975.
Decided February 28, 1977.
*348 *349 Peter W. Brown, Counsel, Dominic J. Ferraro, Asst. Counsel, Harrisburg, for appellant.
Gregory M. Harvey, Philadelphia, for appellee.
Before JONES, C.J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, and NIX, JJ.

OPINION OF THE COURT
POMEROY, Justice.
In this appeal we are again asked by the Pennsylvania Public Utility Commission to establish the proposition that the Commission has been statutorily empowered to order a public utility to extend its service to customers located outside of its certificated service area. In an earlier litigation, the Commonwealth Court held the Commission powerless so to order. Akron v. Pa. P.U.C., 2 Pa.Cmwlth. 625 (1971). This Court vacated the order of the Commonwealth Court in that case, but for a procedural reason which did not reach the merits of the Commission's contention. Akron Borough v. Pa. P.U.C., 453 Pa. 554, 310 A.2d 271 (1973). In this case, the Commonwealth Court has again held that the Commission lacks that power. Western Pennsylvania Water Company v. Pa. P.U.C., 10 Pa.Cmwlth. 533, 311 A.2d 370 (1973). We granted allocatur because of the important question of administrative law presented. On this record *350 we again do not reach the merits of the question of agency power which is tendered, but remand for further proceedings.

I.
A brief historical summary is in order:
In 1966 the Commission, departing from its own precedents, ordered a municipality, operating as a public utility beyond its own boundaries but within a certificated service area, to provide water service to a customer located outside the certificated area. Hoffman v. City of Erie, 42 Pa.P.U.C. 656 (1966). Two years later, the Commission entered a similar order against a privately-owned water company. Kriley v. Butler Water Company, 43 Pa.P.U.C. 586 (1968). Neither of these orders of the Commission was appealed to a court.
In 1967 a private citizen filed a complaint with the Commission against Akron Borough, a municipal corporation which was acting as a public utility in providing water service beyond its municipal boundaries but within a certificated service area, seeking to obtain an extension of service to land of the complainant. The Commission undertook to hear and determine that complaint, but Akron Borough filed a suit within the original jurisdiction of the Commonwealth Court and sought an injunction against the Commission so proceeding.[1] The Commonwealth Court held the Commission powerless to act and granted the injunction.[2] On appeal to this Court, we vacated the injunction and remanded with direction to dismiss the Borough's complaint. It was our view that the *351 Legislature, in enacting the provision of the Public Utility Law authorizing such suits, did not "intend to create any different test for determining in what circumstances a superior court . . . would be justified in prohibiting proceedings in an inferior tribunal" than is customarily applied in determining whether a common law writ of prohibition would issue. 453 Pa. at 564-65, 310 A.2d 271. We noted that absent some administrative hearing at which the facts underlying a complaint seeking service extension might be established, we were being asked to interpret the Public Utility Law and to weigh constitutional questions in vacuo.[3]
In 1972, subsequent to the Commonwealth Court's opinion in Akron Borough (1971) but prior to this Court's opinion in Akron Borough (1973), appellee here, the Western Pennsylvania Water Company, a private public utility corporation, filed an application with the Commission for a certificate of public convenience permitting the company to provide water service to 17 additional customers along a short stretch of road in Butler County outside of its certificated area. The application was routine and was unopposed; no hearing on it was held. On February 13, 1973, the Commission granted *352 the application, but subject to a condition which was as follows:
"It being a condition of such certification that Western Pennsylvania Water Company recognize, and accede to, the right of the Commission to order extension of service in the future should such be appropriate in the Commission's view."
The Water Company refused to accept the certificate so conditioned, and appealed to the Commonwealth Court.[4] In a "long form" opinion and order dated May 1, 1973,[5] the Commission frankly stated that its purpose in including the condition was to avoid the Commonwealth Court's holding in Akron Borough that the Commission was without power to order a utility to provide service beyond its certificated service area.
The Commonwealth Court, as earlier stated, held the Commission to be without such jurisdiction and hence powerless to insist on the condition. The court therefore vacated that portion of the Commission's May 1, 1973 order which set forth the disputed jurisdictional condition above quoted, but affirmed in all other respects.

II.
It comes as a surprise that the Commission should seek to avoid the Commonwealth Court's holding in Akron Borough by insisting that a utility such as appellee subscribe to a concept of the Commission's power which is the exact opposite of that entertained by that court.[6] Administrative agencies are creatures of the legislature *353 and have only those powers which have been conferred by statute. Day v. Public Service Commission, 312 Pa. 381, 167 A. 565 (1933); Community College of Delaware County v. Fox, 20 Pa.Cmwlth. 335, 342 A.2d 468 (1975); City of Pittsburgh v. Milk Marketing Board, 7 Pa.Cmwlth. 180, 299 A.2d 197 (1973). An administrative agency cannot by mere contrary usage acquire a power not conferred by its organic statutes. Commonwealth v. American Ice Co., 406 Pa. 322, 178 A. 2d 768 (1962). It is settled that jurisdiction of a court cannot be extended or conferred by agreement. Calabrese v. Collier Township Municipal Authority, 430 Pa. 289, 240 A.2d 544 (1968); Appeal of Kramer, 445 Pa. 238, 282 A.2d 386 (1971); McConnell v. Schmidt, 234 Pa.Super. 400, 339 A.2d 578 (1975); Employees of Oil City Hospital v. Service Employees International Union, Local 227, AFL-CIO, 18 Pa.Cmwlth. 192, 335 A.2d 537 (1975); it must follow, a fortiori, that an administrative agency cannot acquire jurisdiction by agreement. Nor is it for the agency to seek to create or assure its own jurisdiction by insisting that applicants subscribe to the agency's view of what public policy requires. Drexel-brook Associates v. Pa. P.U.C., 418 Pa. 430, 212 A.2d 237 (1965).[7]
*354 It follows that the Commission, in attempting to insert the disputed jurisdictional condition into the certificate of public convenience, was engaging in a futile act. If, the Commonwealth Court to the contrary, the legislature has in fact endowed the Commission with the power it claims, then the condition would be a truism. If the Commission has no such jurisdiction, then the attempt to create such jurisdiction by agreement with the Water Company would be invalid. We are of the view that the Commission's attempt to resolve a dispute of statutory jurisdiction by imposition in a certificate of a condition supportive of its view is an error of law. See 66 P.S. § 1437 (1959).[8]
*355 Because we must reject the Commission's attempt to settle a difficult question of its own jurisdiction in the fashion it has here employed, we must decline once again, as we did in Akron Borough, to pass upon the merits either of the Commission's claim of jurisdiction to order a utility to extend service to a point beyond its certificated service area, or of the Water Company's claim that its constitutional rights would be infringed and its property unlawfully confiscated were the Commission to exercise the power it asserts. As we observed in our Akron Borough decision, "[t]he line between constitutional regulation and unconstitutional taking is almost never discernible in absence of a concrete factual situation." 453 Pa. at 565, 310 A.2d at 277. Regrettably, we again have no "concrete factual situation" from which to adjudicate either the jurisdictional or constitutional issues which are involved.[9]
*356 While we do not understand from this record that there are facts connected with the instant application which might have caused the Commission to refuse to grant a certificate without the disputed condition, we nevertheless recognize that the possibility exists. See 4 K.C. Davis, Administrative Law Treatise, § 2910 at 183-84 (1958). Rather than affirm the order of the Commonwealth Court which excised the disputed condition from the P.U.C.'s order and affirmed the order as thus altered, we will vacate the order of the Commonwealth Court and vacate the order of the Commission granting the certificate of public convenience, and remand to the Commission for further proceedings consistent with this opinion.
It is so ordered.
MANDERINO, J., did not participate in the consideration or decision of this case.
ROBERTS, J., filed a dissenting opinion in which JONES, C.J., joins.
ROBERTS, Justice, dissenting.
The issue presented is whether the Pennsylvania Public Utility Commission (PUC) has the authority to condition a grant of a certificate of public convenience upon an agreement by a utility to permit the PUC to order future extensions of service beyond the certificated area.[1] A necessarily related question is whether the PUC has the authority to order a utility to provide service beyond *357 a previously granted certificated area, even without a condition in the certificate.[2]
The majority expressly declines to decide whether the PUC can order extensions of service but, nonetheless, holds the condition invalid and remands to the PUC to determine if it would grant the certificate without the condition. I cannot agree with the majority's refusal to reach the issue of the PUC's authority. The question is ripe for adjudication and must be decided to reach a proper disposition. In my view the PUC has the authority to order extensions of service beyond the boundaries of previously granted certificated areas. I would therefore sustain the order of the PUC.
Western Pennsylvania Water Company (Water Company) applied for a certificate of public convenience authorizing them to provide water service to seventeen residents in a described area in Summit Township. The PUC issued a short form order granting the certificate, with the following condition attached:
"It being a condition of such certification that Western Pennsylvania Water Company recognize, and accede to, the right of the Commission to order extension of service in the future, should such be appropriate in the Commission's view."
The PUC thereafter issued a long form order setting forth reasons in support of its previous order. The Water Company appealed the inclusion of the condition in *358 the certificate. The Commonwealth Court struck the condition and affirmed the orders in all other respects. Western Pennsylvania Water Company v. Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, 10 Pa.Cmwlth.Ct. 533, 311 A.2d 370 (1973). The PUC petitioned this Court for review and we granted allocatur.

I
The condition challenged by the Water Company requires no more than that the Water Company recognize and accept the statutory authority of the PUC to order it to extend services beyond the boundaries of its previously granted certificated areas. An extension order would issue after notice and hearing pursuant to provisions set forth in the Public Utility Law.[3] The long form order suggests and the PUC's brief confirms the Commission's agreement with this specific and limiting interpretation.[4]
A determination of the PUC's authority to order extensions is therefore necessary to decide the validity of the condition. The majority, however, strikes the condition without determining the PUC's authority to order extensions. Instead, it devotes much attention to rebuking the PUC for attempting to circumvent the Commonwealth Court's holding in Akron v. Pa. PUC, 2 Pa.Cmwlth.Ct. 625 (1971), rev'd sub nom., Akron Borough v. Pa. PUC, 453 Pa. 554, 310 A.2d 271 (1973). In Akron the Commonwealth Court held that the PUC lacked the authority to order extensions of service beyond the boundaries of a previously granted certificated area. The majority asserts that the PUC promulgated the condition involved *359 here in an effort to circumvent the Commonwealth Court's decision. After the condition was promulgated, however, this Court reversed the decision of the Commonwealth Court and declined to resolve the question of the PUC's authority to order extensions. Thus, there is no decision, binding on the PUC, denying it the authority it asserts in the condition. The propriety of any effort by the PUC to circumvent the Commonwealth Court decision, reversed by this Court in 1973, and of questionable relevance in any event,[5] is simply not before us.
The majority concludes that the condition may be eliminated without deciding whether the PUC has the authority the condition asserts. It reasons that if the PUC does not have the authority to order extensions under its statutory grant, it cannot obtain such authority by agreement or condition. In the alternative, the majority states that if the PUC does indeed have the authority it asserts, the condition is a "truism," which may be stricken from the order.
A finding that the PUC does not have the authority to order extensions, and could not gain such authority by agreement, would be consistent with an order striking the condition. But a finding that the condition is a "truism" would not support the majority's result. If the condition is a "truism," the majority is not justified in striking it from the order. It is not the province of this Court to rewrite PUC orders. An order of the PUC cannot be vacated, in whole or in part, unless the Court finds error of law, lack of evidence to support the findings, *360 or violation of constitutional rights.[6] This Court does not have the power to strike what it considers a "truism" from a lawful PUC order.[7] Because the validity of the condition depends upon the statutory powers of the PUC, this Court cannot properly decide the present *361 controversy without reaching the merits of the PUC's contention that it has the power to order service extensions beyond the lines of an existing certificated area.[8]

II
The majority states that it is unwilling "on this record" to decide whether the PUC has authority to order service extensions, and that this issue is not ripe for adjudication. However, the record is in fact complete, the PUC's power to order extensions is at issue, and must be decided to properly determine the validity of the condition.
The basic principle of ripeness is that "[j]udicial machinery should be conserved for problems which are real and present or imminent, not squandered on problems which are abstract or hypothetical or remote."[9] The doctrine seeks
" . . . to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."
Abbott Laboratories v. Gardner, 387 U.S. 136, 148, 87 S. Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In Abbott Laboratories, Justice Harlan, writing for the Court, stated that the determination of ripeness requires an evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 149, 87 S.Ct. at 1515.[10]
*362 Applying these criteria, this case is ripe. First, the issue is fit for judicial decision. The Water Company is not arguing that a particular order of the PUC may go too far, but that any order to extend service beyond the boundaries of a previously granted certificated area exceeds the statutory limits of the PUC's authority. Resolution of this issue requires an interpretation of the Public Utility Law, upon which the facts of a given case will have little bearing.[11] Like the issue in Abbott Laboratories, it is a "purely legal" question. 387 U.S. at 149, 87 S.Ct. at 1515. Another factor supporting the conclusion that the issue is presently fit for judicial decision is that it arises from a final agency action. Inclusion of the condition in the certificate, after formal agency action, is analogous to the promulgation of a regulation which has not yet been invoked in an enforcement proceeding. Such regulations, when they have an imminent and substantial impact on the parties, are reviewable.[12]
The refusal of the majority to decide the controlling question in the case creates hardship and unnecessary burdens for both the Water Company and the PUC. The *363 Water Company has applied for a certificate to provide services to seventeen residents outside its present certificated area. The certificate has been offered with a condition the utility considers invalid. The Water Company has rejected the condition and is entitled to know whether the PUC can properly deny its application on the basis of that rejection.[13] Additionally, the PUC is hindered by uncertainty as to the scope of its authority in carrying out the public interest objectives of the Public Utility Law. If the PUC is correct, continued delay denies it the use of a legislatively sanctioned power to serve and protect the consuming public's interest.[14]
The PUC's action is final, the issue raised is appropriate for judicial review, and refusal to decide the issue creates a hardship for the parties. Hence, the PUC's authority to order extensions of service, an issue which must be reached to determine the validity of the condition, is ripe for adjudication.[15]

*364 III
In order to adjudicate the validity of the condition challenged by the Water Company, it is necessary to decide whether the Public Utility Law authorizes the PUC to order a utility to extend service beyond the boundaries of its previously granted certificated area. If so, it is also necessary to decide whether the Legislature may grant such power consistent with the fifth and fourteenth amendments to the United States Constitution.[16] In my judgment the Public Utility Law grants such power to the PUC and this authority does not offend the Constitution.

A
The purpose of public utility regulation is to insure that the public receives adequate services at reasonable rates.[17] The overriding concern is the public interest.[18] The operation of a public utility is impressed with a public interest and subject to regulation pursuant to the police power.[19] The Public Utility Commission was created by the Legislature to carry out this necessary regulation and protect the public interest.[20]
*365 The PUC's task requires flexibility because the public interest is a dynamic concept and will not be adequately protected unless the PUC has the authority to meet changing needs. The very concept of regulation implies ongoing and continuous supervision by the regulating agency of those regulated.
This need for flexibility has been recognized and provided for in the Public Utility Law. Section 203[21] provides that the PUC shall grant certificates of public convenience by order when it finds such action to be in the public interest. To such certificates it "may impose such conditions as it may deem to be just and reasonable."[22] The PUC is expressly granted the power, in § 902,[23] "to rescind or modify any such regulation or orders." Section 1007 of the Law[24] provides that "[t]he commission may, at any time, after notice and after opportunity to be heard as provided in the case of complaints, rescind or amend any order made by it."
The Water Company does not contest that a certificate of public convenience is an "order" of the PUC, but argues that the power to amend such orders does not include the power to enlarge its certificated area. The Water Company relies upon section 202 of the Law[25] which reads:
"Upon the application of any public utility and the approval of such application by the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, and not otherwise, it shall be lawful:
(a) For any public utility to begin to offer, render, furnish or supply within this Commonwealth service *366 of a different nature or to a different territory than that authorized by 
(1) A certificate of public convenience heretofore or hereafter granted under this act or under The Public Service Company Law, July 26, 1913 (P.L. 1374). . . ."
The Water Company argues that this section requires that any provision of service outside a previously existing certificated area must be preceded by "the application of [a] public utility." I cannot agree.
Section 202 lists a series of acts by public utilities which the Legislature has determined to be of sufficient public importance to require prior PUC approval.[26] It provides that it is unlawful for a public utility to provide service to a different territory unless it first applies for PUC approval. It does not mean that the PUC can only act when invited to do so by a utility.
The Water Company's interpretation of the phrase "[u]pon the application of any public utility" as a limitation on the power of the PUC to order extensions of service into new areas would create a conflict with other provisions of the Public Utility Law. Section 401 of the Law[27] provides that:
"Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employes, and the public.. . . Such service and facilities shall be in conformity with the regulations and orders of the commission.. . . " (emphasis added)
*367 There is nothing in the language or context of this section to suggest that the obligations to the public imposed upon public utilities are limited to services within previously granted certificated areas. Indeed, prior cases have rejected the argument that public utilities have duties only towards existing patrons or employees because to do so would render the word "public" surplusage.[28] Thus, it must be concluded that the Legislature specifically contemplated that the PUC could order extensions of service when appropriate to serve the "accommodation, convenience, and safety of . . . the public."[29]
Section 401 and the provisions in the Public Utility Law permitting the modifications and amendment of all *368 PUC orders reflect an understanding of the PUC's need for flexibility to adequately protect the public interest. In light of the overriding purpose of the Public Utility Law, to provide the public with adequate service at reasonable rates,[30] the argument of the Water Company that orders to extend services are authorized only within previously existing certificated areas loses its force. When the boundaries of a certificated area are no longer appropriate for providing adequate service to the public, the PUC needs and has been granted the power to amend them.

B
The Water Company argues that to interpret the Public Utility Law as authorizing the PUC to order extensions of services beyond previously established certificated areas would render it unconstitutional. I disagree. Although the PUC could issue an order so burdensome that it would constitute a taking of property without just compensation in violation of the fourteenth amendment, I do not believe that any extension beyond a previously granted certificated area would be unconstitutional.
As early as 1917 the United States Supreme Court upheld the power of a state regulatory commission to order an extension of service by a public utility. New York & Queens Gas Co. v. McCall, 245 U.S. 345, 38 S.Ct. 122, 62 L.Ed. 337 (1917). Writing for the Court, Justice Clarke stated that:
"Corporations which devote their property to a public use may not pick and choose, serving only the portions of the territory covered by their franchises which it is presently profitable for them to serve and restricting the development of the remaining portions by leaving their inhabitants in discomfort without the service which they alone can render. To correct this disposition *369 to serve where it is profitable and to neglect where it is not, is one of the important purposes for which these administrative commissions, with large powers, were called into existence . . . ."
245 U.S. at 351, 38 S.Ct. at 124. See also People of State of New York ex rel. Woodhaven Gas Light Co. v. Public Service Commission, 269 U.S. 244, 46 S.Ct. 83, 70 L.Ed. 255 (1925); United Fuel Gas Co. v. Railraod Commission, 278 U.S. 300, 49 S.Ct. 150, 73 L.Ed. 390 (1929). The Water Company asserts that New York & Queens Gas Co., and its progeny are inapposite because they involved utilities which had obtained local governmental franchises and, consequently, had dedicated their property to public use in the territories in which extensions were ordered. The Water Company concedes that it has charter authority to provide service beyond its present certificated area, but insists that it has dedicated its property to public use only within the certificated area and that its dedicated area cannot be expanded without its consent.
I do not agree that a certificate of public convenience exactly defines the territorial scope of a utility's dedication to public service.[31] It would be impractical to *370 equate a certificate of public convenience with a franchise in determining the area in which a utility may be required to provide service. A governmental unit issuing a franchise can determine the ultimate scope of its service needs because the scope is coextensive with its political boundaries. A certificate of public convenience, however, is issued on the basis of the public's present needs. The PUC cannot at the time of issuance predict the growth and development of a community and, consequently, the future public interest in adequate utility services.
This practical difference between a local governmental franchise and a certificate of public convenience does not render the holdings of New York & Queens Gas Co. and its progeny inapplicable. The logic of these cases is that, having undertaken to serve a community, the utility must make reasonable adjustments in its services to meet changing needs as the area develops. The PUC can constitutionally require the same from utilities under its jurisdiction, guided, of course, by principles of reasonableness. Altoona v. Pa. PUC, 168 Pa.Super. 246, 77 A. 2d 740 (1951).
The conclusion urged by the Water Company would be inconsistent with prior decisions of this Court. To hold that a certificate of public convenience creates a permanent territorial limit on the duty of a utility to serve the public would confer a substantial vested interest on public service companies. This Court has held many times that a certificate of public convenience is neither a contract nor a property interest under which its holder acquires vested rights. See e.g., Day v. Public Service Commission, 312 Pa. 381, 167 A. 565 (1933); Snyder v. Pa. Public Utility Commission, 187 Pa.Super. 147, 144 A.2d 468 (1958); Paradise v. Pa. Public Utility Commission, 184 Pa.Super. 8, 132 A.2d 754 (1957). To hold otherwise would elevate to a protected right the "disposition [of public utilities] to serve where it is profitable and to *371 neglect where it is not" which administrative agencies, like the PUC, with broad regulatory powers, were created to prevent. New York & Queens Gas Co. v. McCall, supra 245 U.S. at 351, 38 S.Ct. at 124.
Interstate Commerce Commission v. Oregon-Washington R. & Nav. Co., 288 U.S. 14, 53 S.Ct. 266, 77 L.Ed. 588 (1933), relied upon by the Water Company, does not require a different conclusion. The Court held that the Interstate Commerce Commission was without the authority to order a railroad to construct a new line, 185 miles in length, at a cost of between $9,900,000 and $11,700,000. Deciding the validity of the order on the basis of legislative intent, the Court noted that the railroad had not dedicated its services to the area the line would cover and stated that an order to serve such an area would raise serious constitutional questions. Even if the Water Company had dedicated its property only to those areas presently being served by it, I believe that the territorial boundaries of the area of dedication may be altered absent its consent. Most persuasive is the dissent of Justice Cardozo in Oregon-Washington, which more accurately describes the constitutional limits upon public service company regulation. 288 U.S. at 43-52, 53 S.Ct. at 275-278 (dissenting opinion of Cardozo, J., joined by Brandeis and Stone, JJ.).[32] As he stated:
"The time has gone by when the subjection of a public service corporation to control and regulation by the *372 agencies of government is to have its origin and justification in the terms of a supposed contract between the corporation and the state. The origin of the subjection and its justification are to be found, not in contract, but in duty, a duty imposed by law as an incident to the enjoyment of a privilege. The discretion of managers and stockholders, at one time nearly absolute, is now subject in countless ways to compulsion or restraint in the interest of the public welfare."
288 U.S. at 47, 53 S.Ct. at 276-77. Noting the comprehensive nature of modern regulatory schemes, Justice Cardozo concluded that:
"The argument is not persuasive that alone among all these inroads upon the freedom of managerial discretion the provision for compulsory extensions is to be struck down as ineffective. As long as governmental orders are kept within the range of reason, their operation is unaffected by expectation or desire.
The Fifth Amendment of the Constitution is invoked by the carriers, but invoked without avail. Consistently with that Amendment Congress may delegate to the Commission the power to force upon unwilling carriers an extension of their lines into fields of old service and of new. Much of what has been written in this opinion as to the meaning of the statute is pertinent also to an inquiry as to power. Again the thought is to be kept before us that the need of the public, not the acquiescence of the carrier, is the measure of the service, provided only that for such service there is adequate requital."
288 U.S. at 48, 53 S.Ct. at 277.
Our guide in determining the scope of the PUC's power must be the public interest, not the financial security of public utilities, which are adequately protected by other provisions of the Public Utility Law and the overriding requirement of reasonableness. As Justice (then *373 Judge) Manderino stated in Akron v. Pa. Public Utility Comm., 2 Pa.Cmwlth. at 641 (1971), "[t]he P.U.C. issues `certificates of public convenience;' not `certificates for the convenience of public utilities.'" (emphasis in original)
The judgment of the Commonwealth Court should be reversed and the Commission order sustained.
JONES, C.J., joins in this dissenting opinion.
NOTES
[1] Public Utility Law § 1111, Act of May 28, 1937, P.L. 1053, art. XI, as amended by Act of June 3, 1971, P.L. 137, No. 6, § 1, 66 P.S. § 1441 (Supp. 1976-77) provides:

"No injunction shall issue modifying, suspending, staying, or annuling any order of the commission, or of a commissioner, except in a proceeding questioning the jurisdiction of the commission, and then only after cause shown upon a hearing."
[2] Judge Manderino, now a Justice of this Court, dissented.
[3] In commenting on the closeness of the jurisdictional issue presented in Akron Borough, we observed in a footnote:

"[A]bsent the single fact that appellee is a Borough and not a private corporation, the power of the Commission after hearing to order extensions of service would be unquestioned." 453 Pa. at 563, n. 9, 310 A.2d at 276.
The instant litigation has impressed upon us that the question of the Commission's power vis-a-vis privately-owned utility companies is not, in fact, "unquestioned", but is on a par with the question of the Commission's power vis-a-vis a municipal corporation providing service in a certificated area beyond its own municipal boundaries.
The Commission, understandably, prefers to view our language quoted above as near decisional. The appellee-Water Company, on the other hand, considers it to be obiter dictum.
We must agree with the Water Company; our language in the Akron Borough decision was dictum, perhaps the more easily disavowed because in a footnote.
[4] Pursuant to a stipulation between the Commission and the Water Company, service has been supplied by the Water Company to the 17 additional customers pending this litigation without prejudice to the respective positions of the parties herein.
[5] The "long form" opinion and order of the Commission were issued pursuant to Rule 23 of the then rules of the Commonwealth Court and took the place of the prior "short form" order of February 13, 1973.
[6] The dissenting opinion argues, infra at 342 and 343, that the Commonwealth Court's decision in the Akron Borough case, 2 Pa.Cmwlth. 625, having been later reversed by this Court, is of "questionable relevance." We disagree, for it is clear that at the time of the imposition of the condition here in dispute, that condition was in direct conflict with the then controlling authority. What is of "questionable relevance" to the issue now before us is the fact that this Court did later happen to vacate the Commonwealth Court's order.
[7] The Commission has relied upon Section 203(a) of the Public Utility Law, 66 P.S. § 1123(a), as authority for its incorporation of the disputed condition. That section authorizes the Commission, in granting a certificate of public convenience, to "impose such conditions as it may deem to be just and reasonable." The Commonwealth Court's view is that the Commission and an applicant for a certificate might dispute the exact area to be covered by a certificate and that "on a proper record made" the Commission might preserve the dispute by offering a certificate conditioned upon the applicant's agreeing to extend its service at some future date to the remainder of the disputed area. 10 Pa.Cmwlth. at 544, 311 A.2d 370. There is, of course, a manifest difference between a condition based on the facts in a specific case and a condition the purpose of which is to cause an applicant to subscribe to a bald proposition of the law of agency jurisdiction.
[8] In his dissenting opinion Mr. Justice ROBERTS argues that the question of the P.U.C.'s jurisdiction to order extensions is "ripe" for decision and that, if we believe it not "ripe," we would be compelled to dismiss this appeal.

The question of the authority of the Commission to order extensions is not purely a legal question of statutory interpretation, for it involves also the constitutional objections advanced by the utility. That point aside, however, there is, as the dissent points out, another element to the "ripeness" equation, namely, "hardship to the parties of withholding court consideration." Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The dissent suggests that hardship to the P. U.C. results because "continued delay denies it the use of a legislatively sanctioned power to serve and protect the consuming public's interest." It cannot be the case that an administrative agency's uncertainty of its interpretation of various provisions of the regulatory statute which it administers can justify bringing to the courts naked questions of statutory interpretation. We note, moreover, that the Public Utility Commission has not in the past felt unable to order public utilities to extend service beyond their certificated service areas. We are aware of three occasions when it has done so. Hoffman v. City of Erie, 42 Pa.P.U.C. 656 (1966); Kriley v. Butler Water Company, 43 Pa.P.U.C. 586 (1968); and, of course, the Akron Borough case, supra.
Nor do we see hardship to the Water Company arising from our refusal to decide at this time the question of P.U.C. jurisdiction. One of appellant's principal arguments in this case is that the imposition of the condition was an unlawful exercise of power. It is clear from the record that it was only the P.U.C.'s interest in the substantive question which caused the Water Company to argue it on the merits, for the question of further "extension of service in the future" is clearly not now involved.
Reliance on Abbott Laboratories, supra, by the dissent is misplaced. In that case compliance with an already-published administrative regulation would have required "chang[ing] all their labels, advertisements, and promotional materials; . . . destroy[ing] stocks of printed matter; . . . invest[ing] heavily in new printing type and new supplies." 387 U.S. at 152-53, 87 S.Ct. at 1517.
Finally, dismissal of this appeal would be an inappropriate disposition because, although we regard the jurisdictional question as not "ripe" for decision, there is before us a question in concrete form which requires decision at this time, viz., whether the Public Utility Commission may resolve jurisdictional questions by insertion of conditions in a certificate. It is that issue which is decided in this appeal, a decision which justifies the remand which we direct.
[9] We note that in Akron Borough it was the decision of the utility to seek an injunction and prevent the Commission from conducting hearings on a third-party complaint which brought the question of the Commission's jurisdiction before this Court without a "concrete factual situation." The Commission objected, properly as we held. Here, it is the Commission which has precipitated this dispute in the absence of an identifiable fact situation. We see no reason why, in a proper case, through a hearing on a third-party complaint or some other appropriate procedure, a record adequate for decision of the tendered issues may not be developed.
[1] A certificate of public convenience, which can only be issued by the PUC, defines, inter alia, the territorial limits within which a public utility may render service. Public Utility Law, Act of May, 1937, P.L. 1053, §§ 201-203, as amended, Act of August, 1963, P.L. 1225, §§ 1-2, 66 P.S. §§ 1121-1123 (1959) (Supp. 1976). "Certificated area" refers to these territorial boundaries established in the certificate.
[2] In Akron Borough v. Pennsylvania Public Utility Commission, 453 Pa. 554, 310 A.2d 271 (1973), we were presented with this question, but did not reach the merits because of the procedural context in which it arose. The case involved an action for an injunction to prevent hearings scheduled before the PUC. The purpose of the hearings was to determine whether an extension of service beyond the Borough's certificated area should be ordered. The Court dismissed the Borough's complaint, holding that in view of the closeness of the question of the PUC's authority to order an extension, and the existence of an adequate remedy at law in the form of an appeal from any final PUC order, an injunction against the hearings was inappropriate.
[3] Act of May, 1937, P.L. 1053, § 1007, 66 P.S. § 1397 (1959). Judicial review of such an order is provided pursuant to 66 P.S. § 1431 (Supp. 1976).
[4] Since the condition can reasonably be interpreted to confer no more authority than the PUC claims for it, I disagree with the decision of the Commonwealth Court that it is overbroad and vague. 10 Pa.Cmwlth.Ct. at 544-45, 311 A.2d at 376.
[5] Even if the Commonwealth Court decision had not been reversed, the issue before this Court would be whether the Commonwealth Court's interpretation of the statute was correct, not whether the PUC acted properly in attempting to challenge the Commonwealth Court's holding. If, for example, the PUC had ordered an extension, and the majority concluded that the PUC had this power, would the majority nonetheless strike the order because it was in conflict with a Commonwealth Court decision in effect at the time the order was promulgated?
[6] The statute governing the scope of judicial review of PUC orders provides, inter alia, that

"[t]he order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights." 66 P.S. § 1437 (1959).
The Commonwealth Court found that the condition was not supported by substantial evidence. 10 Pa.Cmwlth.Ct. at 544, 311 A.2d at 376. However, the condition by its terms applies to future orders which will issue after hearings and which must be supported by substantial evidence at that time. For this reason, the substantial evidence test is inapplicable to a condition requiring future compliance with PUC orders. We have routinely upheld such PUC orders and conditions. See e.g., Day v. Public Service Commission, 312 Pa. 381, 167 A. 565 (1933).
[7] A condition in a certificate of public convenience requiring compliance with future orders promulgated pursuant to statutory powers of the PUC is independently enforceable. In Day v. Public Service Commission, Id., this Court revoked a certificate of public convenience issued a taxicab operator after finding he had repeatedly violated commission orders. After reviewing the statutory provisions authorizing the rescission or modification of certificates, this Court stated:

"Apart from these considerations, it is clear that the commission had the right to revoke the certificate granted appellant in this case, inasmuch as it was awarded upon conditions which were subsequently broken. . . . The third condition was as follows: `That the applicant shall comply with all the provisions of the Public Service Company Law as now existing or as may hereafter be amended, and revised general order No. 18, effective April 1, 1929, or as may hereafter be revised and any other rules and regulations as may hereafter be prescribed by the commission.'"
312 Pa. at 385. 167 A. at 566. Since the general order referred to stated that violation of a condition in a certificate would be grounds for revocation, this Court found this a "complete answer" to the contention that the PUC was without authority to revoke the certificate.
The Public Utility Law expressly provides that those subject to it must comply with lawful PUC orders. E.g., § 401, 66 P.S. § 1171 (1959). Hence, the condition in the certificate of public convenience in Day may have been a "truism." Because it was held independently enforceable, however, it was not surplusage. Nor may the challenged condition here be eliminated as surplusage.
[8] Thus, we are not presented with a "naked question of statutory interpretation."
[9] K. Davis, 3 Administrative Law Treatise § 21.01 at 116 (1958).
[10] Cf. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 156, 71 S.Ct. 624, 640, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring): "[W]hether `justiciability' exists . . . has most often turned on evaluating both the appropriateness of the issues for decision by courts and the hardship of denying judicial relief."
[11] One commentator suggests that a generalized challenge of a regulation or order presents a better case for decision than review of a specific enforcement proceeding. He asserts, for example, that a generalized challenge will normally be brought by a party with both the resources and motive to fully explore the question, and that the court, in such a case, can focus on the particular order or regulation which might otherwise become obscured by other issues. Vining, Direct Judicial Review and the Doctrine of Ripeness in Administrative Law, 69 Mich.L.Rev. 1443, 1516-1522 (1971).
[12] See e.g., Columbia Broadcasting System v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956); Frozen Food Express v. United States, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 730 (1956); K. Davis, Administrative Law Treatise § 21 (Supp. 1970). But cf. Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission, 396 Pa. 34, 152 A.2d 422 (1959).
[13] The majority's assertion that there is no hardship to the Water Company because no extensions have yet been ordered depends upon its conclusion that the condition is either invalid or a "truism" with no independent effect. I disagree with this view. See note 7, supra.

The Water Company has in fact begun providing service to the seventeen residents in Summit Township. However, this service is provided pursuant to a stipulation entered into by the Water Company and the PUC, and not pursuant to the certificate issued by the PUC. The stipulation expressly preserves the Water Company's objection to the certificate.
[14] The majority cites three instances in which the PUC ordered extensions of services. This does not negate the hardship to the PUC from the majority's failure to decide the PUC's authority to order extensions. Since the parties in those three cases did not appeal, the extensions were, in effect, consented to. The question the majority avoids here is whether the PUC must depend upon such consent to order extensions.
[15] The majority, after invalidating the condition, remands to the PUC in light of the possibility that the PUC would not have granted the certificate without the condition. This disposition is of little help to the PUC. The condition was promulgated to meet the need for future extensions. Since the majority does not resolve the question of the PUC's power to order extensions, the PUC is in no better position to determine whether the extension, without the condition, should be granted.
[16] The fifth amendment provides in relevant part: ". . . nor shall private property be taken for public use, without just compensation." U.S.Const. amend. V. While the fifth amendment is applicable only to the federal government, the due process clause of the fourteenth amendment (U.S.Const. amend. XIV, § 1) has been construed to place the same limitation on the states. E.g., Delaware, L.& W.R. Co. v. Town of Morristown, 276 U.S. 182, 48 S.Ct. 276, 72 L.Ed. 523 (1928).
[17] Metropolitan Edison Co. v. Public Service Commission, 127 Pa.Super. 11, 191 A.2d 678 (1937).
[18] D.F. Blast, Inc. v. Pa. PUC, 185 Pa.Super. 487, 138 A.2d 270 (1958), rev'd on other grounds, 397 Pa. 246, 154 A.2d 505 (1959); Sayre v. Pa. PUC, 161 Pa.Super. 182, 54 A.2d 95 (1947); Colombo v. Pa. PUC, 159 Pa.Super. 483, 48 A.2d 59 (1946).
[19] Rogoff v. Buncher Co., 395 Pa. 477, 151 A.2d 83 (1945).
[20] E.g., Metropolitan Edison Co. v. Public Service Commission, supra, n. 12.
[21] 66 P.S. § 1123 (1959).
[22] Id.
[23] Id. § 1342.
[24] Id. § 1397.
[25] Id. § 1122 (Supp. 1976).
[26] The title of this section is "Enumeration of acts requiring certificate." Id.
[27] 66 P.S. § 1171 (1959).
[28] Postal Telegraph-Cable Co. v. Pa. Public Utility Commission, 154 Pa.Super. 340, 35 A.2d 535 (1944); West Penn. Rys. Co. v. Pa. Public Utility Commission, 142 Pa.Super. 140, 15 A.2d 539 (1940).
[29] Cf. § 403 which states that common carriers must provide services "to and from such stations or points, as the commission, having regard to the accommodation, convenience, and safety of the public, may require." 66 P.S. § 1173 (1959). This provision cannot be reconciled with an interpretation of the Public Utility Law requiring a utility's consent prior to ordering service to new points. It is even more explicit than § 401 in demonstrating the Legislature's intent that the PUC have the authority to order utilities to provide services to new areas without regard to the utility's consent. That § 403 applies only to common carriers does not suggest that the obligation to make extensions, imposed upon all utilities in § 401, be read more narrowly. Section 403 restates a number of the obligations imposed by § 401 in slightly different form. Compare, for example, "Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities . . . ." and "[s]uch service shall also be reasonably continuous and without unreasonable interruptions or delay.. . ." in § 401, with "[e]very common carrier shall furnish a reasonably sufficient number of safe facilities . . . run and operate the same with such motive power as may reasonably be required . . . and shall operate its facilities with sufficient frequency . . . as the commission, having regard to the accommodation, convenience, and safety of the public, may require . . . ." in § 403.

Moreover, it is the introductory phrase to § 202, applicable to all utilities, including common carriers, which the Water Company interprets as a limitation on the PUC's power to order extensions to new areas. While there may be different policy considerations applicable to water companies and common carriers, the identical phrase cannot be interpreted as a limitation on the PUC's power with regard to one and not the other.
[30] See note 17, supra.
[31] Cf. Phila. Rural T. Co. v. P.S.C., 103 Pa.Super. 256, 158 A. 589 (1931), which involved a challenge of an extension order within the charter territory, but beyond the limits of an application for a certificate of public convenience. Responding to the same constitutional arguments raised by the Water Company in this case, the court held the scope of dedication to be coextensive with the charter territory of the company and upheld the order. 103 Pa.Super. at 264, 158 A. at 592. The Water Company argues that the significance of charter territories has been vitiated by the 1963 amendments inviting public utilities to incorporate under or be governed by the Business Corporation Law, which permits a corporation to conduct business throughout the state. 15 P.S. §§ 1001-2202 (1967). Because I do not believe that the scope of dedication of a public utility can be changed only by its consent, see infra, it is unnecessary to define the Water Company's present scope of dedication. I only note that the argument of the Water Company that its certificated area defines its scope of dedication would, if accepted, require a departure from existing case law. See also Johnstown Water Co. v. Pa. P.S.C., 107 Pa.Super. 540, 545, 164 A. 101, 103 (1933).
[32] Cf. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). The Water Company also cites Atchison, Topeka & Sante Fe Ry. v. Railroad Com'n, 173 Cal. 577, 160 P. 828 (1916) and California Water and Tel. Co. v. Public Utilities Com'n, 51 Cal.2d 478, 334 P.2d 887 (1959) as support for its constitutional arguments. It would appear, however, that the California Supreme Court no longer accepts the validity of these cases as a matter of constitutional law. In Richfield Oil Corporation v. Public Utilities Com'n, 54 Cal.2d 419, 354 P.2d 4 (1960), Justice Traynor, writing for the Court, reviewed these earlier decisions and followed them as a reflection of legislative intent, but noted: "We may assume without deciding that initially dedication as a prerequisite to public utility regulation was imposed on the broad language of the Public Utility Act solely to meet constitutional objections that are no longer valid." 354 P.2d at 11.